**Laurie Bahrakis, Rich Gunson, Parnell Hauser, Jesse James, Mabel Kujawa, Larry Lefczik, Fred Spears and Harbor View Mobile Homeowners Association, Inc.**, on behalf of themselves, the class of current, former, and future mobile homeowners in the Park and all others similarly situated,

     Plaintiffs,

Vs.

**Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor view MHC, L.L.C., Equity LifeStyle Properties, Inc., MHC Operating Limited Partnership, Joseph Allen Bobo, Lutz, Bobo and Telfair, P.A.,** d/b/a Lutz, Bobo, Telfair, Eastman and Bobo, f/k/a Lutz, Webb and Bobo, P.A.,

     Defendants.

_____/

Case No.

**Class Action Representation And Demand For Jury Trial Injunctive Relief Sought**

**COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 3

II.   JURISDICTION ................................................................................................. 5

III.  VENUE ............................................................................................................... 6

IV.   PARTIES ............................................................................................................ 6

    A.  Plaintiffs ..................................................................................................... 6

          1.    Individual Plaintiffs ................................................................... 6

          2.    Harbor View Mobile Homeowners Association, Inc. ............................ 6

    B.  Defendants ................................................................................................ 7

          1.    Individual Defendants ............................................................... 7

          2.    Equity LifeStyle Corporate Defendants ............................... 8

          3.    Lawyer/Law Firm Defendants .............................................11

V.    **FACTUAL ALLEGATIONS** ..........................................................................11

    A.  Fraudulent sale or transfer of the Park ...............................................11

    B.  Illegal 2015/2018 long-term agreement ........................................... 13

    C.  Further circumvention of statutory regulations: .............................. 18

          1.    Rejection of Plaintiffs' park lot rental comparables ........... 18

          2.    Imposition of illegal fees and charges ............................... 18

          3.    Imposition of illegal conditions upon resale .................... 19

          4.    Diverting resales to the benefit of the Defendants ........................... 21

          5.    Hyper-technical rule violations and illegal evictions ....................... 21

          6.    Deprive Plaintiffs of a handicap accessible Park clubhouse ............. 21

          7.    Concealed identities of resale mobile home purchasers ................. 22

          8.    Deteriorated seawalls, degraded lots, and houses sinking ............ 22

VI.   **CLASS ACTION ALLEGATIONS** ............................................................ 24

    A.  Plaintiff Class ......................................................................................... 24

    B.  Disability Subclass ............................................................................... 24

VII.  **MAIL AND WIRE FRAUD** ...................................................................... 27

VIII. **CLAIMS FOR RELIEF** ............................................................................. 32

         Count 1: RICO ...................................................................................... 32

         Count 2: RICO ...................................................................................... 40

          Count 3: RICO ...................................................................................... 47

         Count 4: RICO Conspiracy ................................................................. 49

         Count 5: FDUTPA ................................................................................ 52

         Count 6: ADA ....................................................................................... 57

         Count 7: Florida Mobile Home Act .................................................. 65

         Count 8: Exploitation of Elderly ...................................................... 74

         Count 9: Fair Housing Act ................................................................. 76

IX.   **DEMAND FOR JURY TRIAL** ................................................................. 79

Plaintiffs Laurie Bahrakis, Rich Gunson, Parnell Hauser, Jesse James, Mabel Kujawa, Larry Lefczik, Fred Spears and Harbor View Mobile Homeowners Association, Inc., as putative class representatives on behalf of themselves, the class of current, former, and future mobile homeowners in the Harbor View Mobile Home Park and all others similarly situated, by and through the undersigned counsel, bring this Complaint against Defendants Eric Zimmerman, an individual, Stanley Martin, an individual, Rene Scott, an individual, Sydney Morris, an individual, Harbor View MHC, L.L.C., a foreign (Delaware) limited liability company, Equity LifeStyle Properties, Inc., a foreign (Maryland) corporation, MHC Operating Limited Partnership, a foreign (Illinois) limited partnership, Joseph Allen Bobo, an individual, Lutz, Bobo and Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman and Bobo, f/k/a Lutz, Webb and Bobo, P.A., a Florida corporation, collectively referred to in this Complaint as "Defendants," and alleges:

## I.    INTRODUCTION

1.      The Plaintiffs seek to represent a class of over 900 largely elderly current, former, and future mobile homeowners in the Harbor View Mobile Home Park from 2009 to the present with identical or substantially similar underlying mobile home lot rental agreements and restrictions or sub-parts and who were, are, or will be harmed by Defendants' fraudulent, illegal, and conspiratorial acts to:

- sell or transfer the Park in violation of the Plaintiff homeowners' right statutory rights and of first refusal in violation of § 723.071, *Fla. Stat.*;

- coerce and defraud the elderly Plaintiffs into accepting an illegal 2015 long term lot rental agreement. In 2018, the Defendants attempted to coerce and defraud the Plaintiffs into accepting another illegal long term lot rental agreement;

- compel the Plaintiffs to forfeit the protection of statutory regulations under Chapter 723, *Fla. Stat.*, the Florida Mobile Home Act, and under

Federal and Florida law, including:

1. rejection of the Harbor View HOA's lot rental comparables;

2. imposition of illegal fees and charges;

3. imposition of illegal conditions upon resale;

4. diversion of the Plaintiffs' resales by illegal manipulation of the approval process;

5. frustration of home resales by a blanket prohibition for prospective homeowners with a prior criminal conviction;

6. subjecting Plaintiffs to hyper-technical rule violations and illegal evictions;

7. depriving the elderly disabled Plaintiffs of a handicap accessible Park clubhouse, facilities, and common areas;

8. impaired the representative Harbor View HOA's discharge of its fiduciary duty to the Plaintiff homeowners by concealing the identities of resale purchasers on the pretext of privacy regulation;

9. failing to maintain the Park stormwater drainage and electrical connections and attendant utility systems in violation of § 723.022(4), *Fla. Stat.*;and

10. failing to repair or replace seawalls or otherwise prevent the deterioration or degradation of Plaintiffs' lots and the sinking of some Plaintiffs' homes.

## II.    JURISDICTION

2.      This action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, *et seq*., and various other state common law doctrines or statutes. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

3.      Plaintiffs' claims brought under Florida law are so related to Plaintiffs' federal claims, over which the Court has original jurisdiction, that they form part of the case or controversy. Under Article III of the United States Constitution, the Court has supplemental jurisdiction over Plaintiffs' related state common law and statutory claims under to 28 U.S.C. § 1367. The Plaintiffs seek damages and declaratory relief under to 28 U.S.C. § 2201.

4.      Under § 48.193, *Fla. Stat*., this Court has personal jurisdiction over each defendant because, among other reasons, each defendant operates, conducts, engages in, or carries on a business or business venture in the State of Florida or has an office in the State of Florida or has committed tortious acts within the State of Florida.

5.      In the alternative, under 18 U.S.C. § 1965(a), this Court has personal jurisdiction over each defendant because each defendant resides, is found, has an agent, or transacts his/her affairs in this district.

6.      To the extent any defendant is found not to be subject to this Court's personal jurisdiction under § 48.193, *Fla. Stat*., or 18 U.S.C. § 1965(a), this Court may exercise personal jurisdiction over the defendant(s) under 18 U.S.C. § 1965(b) because the ends of justice require that the Court exercise personal jurisdiction over any defendant who claims not to have sufficient minimum contacts with the forum. Defendants engaged in a multi-district conspiracy to defraud Plaintiffs. The Court has personal jurisdiction over most, if not all, of the alleged co-conspirators, and there is no other district that may exercise personal jurisdiction over all Defendants.

## III.     VENUE

7.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to these claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## IV.     PARTIES

### A.     Plaintiffs

### 1.     Individual Plaintiffs

8.     **Laurie Bahrakis, Rich Gunson, Parnell Hauser, Jesse James, Mabel Kujawa, Larry Lefczik**,and **Fred Spears** are individual Plaintiffs who reside in Florida and are bona fide mobile homeowners who rent or lease the lot underneath their mobile home for residential use within the Harbor View Mobile Home Park ("Park") located at 6617 Louisiana Ave., Pasco County, New Port Richey, Florida. The Park is an age 55 or older mobile home park with 471 mobile home lots. A copy of the Park overview or site plan is attached as Exhibit A and adopted. The individual Plaintiffs are the putative class representatives and act on behalf of themselves, the class of over 900 elderly current, former, and future mobile homeowners in the Park and all others similarly situated.

### 2.     Harbor View Mobile Homeowners Association, Inc.

9.     Plaintiff **Harbor View Mobile Homeowners Association, Inc.** ("Harbor View HOA") is a Florida not-for-profit corporation with its principal place of business located in the Park at 5653 Clubhouse Dr., Pasco County, New Port Richey, Florida. Harbor View HOA was initially incorporated in 1989. Harbor View HOA operates in compliance with §§ 723.075 through 723.079, *Fla. Stat*. The Harbor View HOA is the putative class representative and acts on behalf of itself, the class of over 900 elderly current, former, and future mobile homeowners in the Park who **seek injunctive or**

**declaratory relief in this Complaint**, and all others similarly situated. Together, the individual Plaintiffs and Harbor View HOA will be referred to as "Plaintiffs." In August 2018 the Harbor View HOA sent a Civil Theft Demand letter to the Defendants, their affiliated entities, and individuals seeking a trebled damage demand in the amount of $26,884,842. A copy of the Civil Theft Demand letter is attached as Exhibit B and adopted.

### B. Defendants

### 1. Individual Defendants

10. Defendant **Eric Zimmerman** is an individual who currently resides in Lee County, Florida. Eric Zimmerman was a Regional Vice President of Defendant Equity LifeStyle Properties, Inc., from 2011 through July 2018. He is currently Vice President and Chief Operating Officer at Murex Properties, LLC. He was formerly Southeast Division President at Hometown America, Inc., from 2003-2011. Eric Zimmerman was also engaged in business from 2011 through July 2018 as an operator of the Park as defined by § 723.003(16), *Fla. Stat*. He has held leadership positions of the Florida Manufactured Housing Association, Inc.– the trade association for park owners.

11. Defendant **Stanley Martin** is an individual who currently resides in Hillsborough County, Florida. Stanley Martin is a Vice President and Corporate Counsel of Defendant Equity LifeStyle Properties, Inc., from 2015 through present day. He is a licensed Florida lawyer since 1999. Stanley Martin is described in official court records in the Pasco County Clerk of Court as a lawyer for Defendants Harbor View MHC, L.L.C., Equity LifeStyle Properties, Inc., and MHC Operating Limited Partnership.

12. Defendant **Rene Scott** is an individual who currently resides in Hillsborough County, Florida. Rene Scott is a Senior Regional Manager of Defendant Equity LifeStyle Properties, Inc. Rene Scott is also engaged in business from 2018 through

the present as an operator of the Park.

13.    Defendant **Sydney Morris** is an individual who currently resides in Hillsborough County, Florida. Sydney Morris is a Senior Regional Manager of Defendant Equity LifeStyle Properties, Inc. Sydney Morris is also engaged in business from 2015 through the present as an operator of the Park.

**2.    Equity LifeStyle Corporate Defendants:**

14.    Defendant **Harbor View MHC, L.L.C.** ("Harbor View MHC"), is a foreign (Delaware) limited liability company since 2011 with a principal address of Two North Riverside Plaza, Suite 800, Chicago, IL 60606, which is also the Chicago corporate headquarters for Defendants Equity LifeStyle Properties, Inc., and MHC Operating Limited Partnership. Harbor View MHC is also engaged in business at the Park. Harbor View MHC is described in official court records in the Pasco County Clerk of Court as the "mobile home park owner" of the Park as defined by § 723.003(13), *Fla. Stat.,* which includes an "owner" or "operator." Harbor View MHC is also an "operator" of the Park as defined by § 723.003(16), *Fla. Stat.*

15.    Defendant **Equity LifeStyle Properties, Inc.***,* ("Equity LifeStyle"), is a foreign (Maryland) corporation since 2004 with a principal address of Two North Riverside Plaza, Suite 800, Chicago, Illinois, which is also the Chicago corporate headquarters for Defendants MHC Operating Limited Partnership and Harbor View MHC. Equity LifeStyle is also engaged in business at the Park. Equity LifeStyle is the "mobile home park owner" of the Park as defined by § 723.003(13), *Fla. Stat.,* which includes an "owner" or "operator." Equity LifeStyle is also an operator of the Park. Equity LifeStyle is publicly traded on the New York Stock Exchange. Equity LifeStyle has a published Business Ethics and Conduct Policy. The pertinent sections are reproduced below (emphasis added):

*** *

I.    Introduction

This Policy sets forth the basic guidelines which Equity LifeStyle Properties, Inc. and its subsidiaries (collectively, the "Company") expects its officers, directors, management, and other employees to follow in conducting business on behalf of the Company with the Company's customers, the general public, creditors, suppliers and competitors, governmental entities and with fellow Company personnel….

***

A.    General Policy

The Company and its personnel **will at all times transact business in full compliance with the law and in accordance with the highest principles of honesty and ethical conduct.** Each employee should endeavor to deal fairly with the Company's customers, suppliers, competitors and employees. **No employee should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair-dealing practice.** These Policy guidelines are to be strictly adhered to at all times and under all circumstances. Policy violations will result in disciplinary action, including, if appropriate, discharge from employment.

B.    Scope

**The guidelines set forth in this Policy apply to all Company personnel and all Company related transactions.** Every director, officer and employee must be familiar with and comply with this Policy. Moreover, those with supervisory responsibilities must ensure that employees under their direction or control are acquainted with applicable portions of the Policy. Company officers and directors should also be aware that there are special legal requirements, not covered by this Policy, which apply to corporate fiduciaries.

**The Company's commitment to full compliance applies to all applicable laws, regulations and judicial decrees of the United States (federal, state and local) and of other countries where the Company transacts its business. Portions of this Policy concentrate on laws and regulations which are particularly relevant to our business activities; however, this special emphasis on relevant areas of law does not limit the general policy requiring full compliance with all applicable laws and regulations.**

In addition to compliance with all legal requirements, each officer, director and employee must adhere to the overriding ethical and professional standards generally governing the conduct of business. The Company's interests are not served by any unethical practice or activity even though not in technical violation of the law.

***

III.    Compliance with Laws, Rules, and Regulations

A.    Compliance with Governmental Authorities

**The Company and its directors, officers and employees shall comply with the laws, regulations, decrees and orders of every governmental agency, regulatory authority, and judicial body having jurisdiction over the Company's operations.** The Company holds informational and training sessions to promote compliance with laws, rules and regulations, including insider trading laws. The Company shall cooperate with governmental agencies in the proper performance of their duties to the fullest extent possible. To ensure the Company's compliance and cooperation commitment is satisfied, the Legal Department should be immediately informed of any governmental request or inquiry.

***

16.    Defendant **MHC Operating Limited Partnership** ("MHC Operating"), is a foreign (Illinois) limited partnership, formed in 1993 with a principal address of Two North Riverside Plaza, Suite 800, Chicago, Illinois, which is also the Chicago corporate headquarters for Defendants Equity LifeStyle and Harbor View MHC. MHC Operating is also engaged in business at the Park. MHC Operating is a general partner of Equity LifeStyle since April 2004. MHC Operating is described in official court records in the Palm Beach County Clerk of Court as the "mobile home park owner" of the Park as defined by § 723.003(13), *Fla. Stat.,* which includes an "owner" or "operator." MHC Operating is also an operator of the Park. MHC Operating is legally obligated to the same Equity Lifestyles Business Ethics and Conduct Policy reproduced, in part, *supra*.

### 3.     Lawyer/Law Firm Defendants

17.     Defendant **Joseph Allen Bobo** ("Allen Bobo") is an individual who currently resides in Sarasota County, Florida. Allen Bobo is a licensed Florida lawyer since 1982, a partner and/or an employee or shareholder of Defendant Lutz, Bobo and Telfair, P.A., 2 N. Tamiami Trail, Ste. 500, Sarasota County, Sarasota, Florida. Allen Bobo is a partner or principal of Defendant Lutz, Bobo and Telfair, P.A.

18.     Defendant **Lutz, Bobo and Telfair, P.A.** ("Lutz Bobo Law Firm"), d/b/a Lutz, Bobo, Telfair, Eastman and Bobo, f/k/a Lutz, Webb and Bobo, P.A., is a Florida corporation which operates in Leon County, Florida at 2155 Delta Blvd., Suite 201B, Tallahassee, Florida and in Sarasota County, Florida at One Sarasota Tower, Two North Tamiami Trail, Fifth Floor, Sarasota, Florida.

## V.     FACTUAL ALLEGATIONS

### A.     Fraudulent sale or transfer of the Park

19.     On or before March 21, 2002 the Park co-owners John Holden, Sr., Manager of Harborview Investors, LLC, and Mary Ann Holden, Manager of MAH Harborview Holdings, LLC, agreed to sell the Park to Barry Haase, Manager of Diversified Investments Services, LLC, a Delaware limited liability company.

20.     The agreement between the parties contemplated the conveyance of the Park to a new LLC, Harbor View MHC, LLC, a Delaware limited liability company which, along with its Managing Member, Diversified Investments-HVMHC, LLC, would be formed June 21, 2002.

21.     Diversified Investments, LLC, registered the Delaware LLC, Harbor View MHC, LLC on June 24, 2002 with the State of Florida.

22.     On July 11, 2002, the Holdens recorded with the Pasco County Clerk (OR BK 5005 PGs 793-800) a warranty deed and a fraudulent affidavit that:

a) they complied with Section 723.071(2), *Fla. Stat.*, by mailing the Harbor View HOA a Notice on March 21, 2002 with the price and material terms and conditions of the Agreement between the Park owners and the buyer, Harbor View MHC, LLC;

b) Section 723.071(1), *Fla. Stat.*, was "inapplicable to this sale of the Park" but that "the purchase price set forth in the Agreement [had] not been lowered from the purchase price specified in the Notice;" and

c) the Harbor View HOA had not responded to the March 21, 2002 notice or executed a contract to purchase the Park.

23. On or about the Fall of 2002 the Defendant MHC Operating and Equity LifeStyle purchased a large portfolio of mobile home parks from Diversified Investments Services, LLC, including this Park.

24. On September 3, 2002 Defendant MHC Operating registered Harbor View MHC, L.L.C., as a foreign (Delaware) limited liability company. The name of this registration differed from the earlier registration in that the "LLC" portion of the name now contained periods: "L.L.C." Diversified Investments, LLC, allowed the other LLC, Harbor View MHC, LLC (without periods between the LLC), to become inactive on September 26, 2003 for failing to file its 2003 annual report.

25. The Harbor View HOA did not receive the March 21, 2002 notice. The Harbor View HOA only subsequently learned about the sale of the Park. The Harbor View HOA was never given an opportunity to execute a contract for the purchase of the Park.

26. The Plaintiffs only just learned in November 2019 that MHC Operating and Equity LifeStyle concealed that their 2002 acquisition of the Park and circumvented the Harbor View HOA's statutory legal rights of first refusal under § 723.071, *Fla. Stat.*.

**B.**     **Illegal 2015/2018 long term agreement**

27.      On February 20, 2015 Defendants Equity LifeStyles, MHC Operating, Allen Bobo, and Lutz Bobo Law Firm fraudulently compelled the representative incorporated Plaintiff Harbor View HOA to execute an illegal long term rental agreement ("LTA"), drafted by Allen Bobo and Lutz Bobo Law Firm. A copy of the 2015 LTA is attached as Exhibit C and adopted.

28.      Section 2 of the 2015 LTA required the imposition of an illegal and oppressive $35 late fee in violation of §§ 723.031, 723.032, and 723.021, *Fla. Stat*.

29.      Section 4 of the 2015 LTA violated § 723.037(1), *Fla. Stat*., by declaring the 2015 LTA as "sufficient notice" of the annual increases in the base rent. It relegated any statutorily required annual notices instead as optional "courtesy notices" and excused any technical non-compliance with the form, content, or service provisions of the Florida Mobile Home Act related to such annual notices.

30.      Section 4 of the 2015 LTA also violated § 723.031(1), *Fla. Stat.,* by requiring that if the Harbor View HOA contended that Defendants were in violation of the 2008 LTA, the prospectus, any rental agreement, or the Florida Mobile Home Act, the Harbor View HOA must have notified the Defendants in writing of the facts "giving rise to and constituting such alleged non-compliance" by certified mail within thirty days of the date the Association receives reasonable notice of such facts. The 2015 LTA then provided the Defendants fifteen days from receipt of the notice to "cure" the alleged non-compliance. Upon completion of any such cure, the Defendants shall be "deemed" not to have been in default or in violation.

31.      Section 4 of the 2015 LTA violated § 723.032(2), *Fla. Stat.,* by requiring that the ninety day notice and forty-five day opportunity to cure provisions be deemed to be a condition precedent to any legal, equitable or administrative action concerning the

alleged non-compliance.

32.     Section 6 of the 2015 LTA prohibited, in violation of § 723.068, *Fla. Stat.*, an award of attorneys' fees or costs in any proceeding "by or on behalf of any former or current Homeowner seeking to invalidate or otherwise dispute the validity of the [LTA]." Further, section 6 of the 2015 LTA required the Harbor View HOA and the Defendants to "mutually enforce this Agreement and cooperate fully in the event the validity or integrity of this Agreement is attacked or disputed by any such Homeowner."

33.     Section 7 of the 2015 LTA required, in violation of §§ 723.031(1) 723.032(2), *Fla. Stat.,* that any controversy or claim related to the LTA shall first require non-binding mediation under § 723.038 or Chapter 44, , *Fla. Stat.* Section 7 also required that in any court proceeding "arising out of or relating to " the LTA, the parties must waive their right to a jury trial. Section 7 of the 2015 LTA violated Article 1, Section 21 of the Constitution of the State of Florida (Access to Courts: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay.") and Section 22 Constitution of the State of Florida (Trial by jury: "... shall be secure to all and remain inviolate....").

34.     Section 8 "Homeowners Affected by this Agreement; Transferees," of the 2015 LTA wrongfully excused the Defendants from delivering or redelivering a prospectus to the resale purchaser. Section 8 goes further and burdens the delivery of a prospectus upon the resale seller in clear violation of §§ 723.011(1)(a) and 723.011(2), *Fla. Stat.* Section 8 also permits "incentive arrangements" by the Defendants for the sale or rental of new or used homes in violation of § 723.031(5), *Fla. Stat.*

35.     Section 9 "Releases" of the 2015 LTA expressly releases, in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*, the Defendants along with a broad litany of unknown and unidentified persons and entities: "... and their parents, affiliates, subsidiaries, officers, directors, agents, stockholders, members , attorneys, successors and

assigns..." from "any and all claims, actions or causes of action of any kind whatsoever ... which the Association now has or ever had ...."including violations of Chapter 723, Florida Statutes.

36.     Section 10 "Applicability of Prospectus, Rental Agreement and Chapter 723, Florida Statutes" of the 2015 LTA elevated, in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*, the LTA as controlling in the event of a conflict between the LTA and the prospectus or rental agreement.

37.     Section 11 "Entire Agreement; Modification" of the 2015 LTA declared that the LTA superseded, in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*, all prior and contemporaneous discussions, negotiations, conditions or understandings relating to the LTA.

38.     Section 12 "Further Assurances" of the 2015 LTA required that the Harbor View HOA "confirm the validity" of the LTA and execute documents and take action as requested by the Defendants to "carry out or more effectively satisfy the intent and purposes" of the LTA; all in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*

39.     Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, MHC Operating, Allen Bobo, and Lutz Bobo Law Firm and the Harbor View HOA provided input to or attended mediation of the 2018 lot rental increase. Allen Bobo insisted that a "standardized" Long Term Agreement ("LTA") be a part of any mediated settlement. A copy of the proposed standardized 2018 LTA is attached as Exhibit D and adopted.

40.     Section 4 of the proposed 2018 LTA violated § 723.031(1), *Fla. Stat.,* by requiring that if the Harbor View HOA contended that Defendants were in violation of the proposed 2018 LTA, the prospectus, any rental agreement, or the Florida Mobile Home Act, the Harbor View HOA must notify Defendants in writing of the facts "giving

rise to and constituting such alleged non-compliance" by certified mail within ninety days of the date the Association received reasonable notice of such facts. The proposed 2018 LTA then provided the Defendants forty-five days from receipt of the notice to "cure" the alleged non-compliance. Upon completion of any such cure, the Defendants were to be "deemed" not to have been in default or in violation.

41. Section 4 of the proposed 2018 LTA violated § 723.032(2), *Fla. Stat.,* by requiring that the ninety day notice and forty-five day opportunity to cure provisions be deemed to be a condition precedent to any legal, equitable or administrative action concerning the alleged non-compliance.

42. Section 5 of the proposed 2018 LTA prohibited, in violation of § 723.068, *Fla. Stat.*, an award of attorneys' fees or costs in any proceeding "by or on behalf of any former or current Homeowner seeking to invalidate or otherwise dispute the validity of the [LTA]." Further, section 5 of the proposed 2018 LTA required the Harbor View HOA and the Defendants to "mutually enforce this Agreement and cooperate fully in the event the validity or integrity of this Agreement is attacked or disputed by any such Homeowner."

43. Section 6 of the proposed 2018 LTA required, in violation of §§ 723.031(1) 723.032(2), *Fla. Stat.,* that any controversy or claim related to the LTA shall first require non-binding mediation under § 723.038 or Chapter 44, , *Fla. Stat.* Section 7 also required that in any court proceeding "arising out of or relating to " the LTA, the parties must waive their right to a jury trial. Section 6 of the proposed 2018 LTA violated Article 1, Section 21 of the Constitution of the State of Florida (Access to Courts: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay.") and Section 22 Constitution of the State of Florida (Trial by jury: "... shall be secure to all and remain inviolate....").

44. Section 7 "Homeowners Affected by this Agreement; Transferees," of the

proposed 2018 LTA wrongfully excused the Defendants from delivering or redelivering a prospectus to the resale purchaser. Section 8 goes further and burdens the delivery of a prospectus upon the resale seller in clear violation of §§ 723.011(1)(a) and 723.011(2), *Fla. Stat.* Section 8 also permits "incentive arrangements" by the Defendants for the sale or rental of new or used homes in violation of § 723.031(5), *Fla. Stat.*.

45.    Section 8 "Mutual Releases" of the proposed 2018 LTA expressly releases, in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*, the Defendants along with a broad litany of unknown and unidentified persons and entities: "... and their parents, affiliates, subsidiaries, officers, directors, agents, stockholders, members , attorneys, successors and assigns..." from "any and all claims, actions or causes of action of any kind whatsoever ... which the Association now has or ever had ...."including violations of Chapter 723, Florida Statutes.

46.    Section 9 "Applicability of Prospectus, Rental Agreement and Chapter 723, Florida Statutes" of the proposed 2018 LTA elevated, in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*, the LTA as controlling in the event of a conflict between the LTA and the prospectus or rental agreement.

47.    Section 10 "Entire Agreement; Modification" of the 2018 LTA declared that the LTA superseded, in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*, all prior and contemporaneous discussions, negotiations, conditions or understandings relating to the LTA.

48.    Section 11 "Further Assurances" of the proposed 2018 LTA required that the Harbor View HOA "confirm the validity" of the LTA and execute documents and take action as requested by the Defendants to "carry out or more effectively satisfy the intent and purposes" of the LTA; all in violation of §§ 723.021, 723.031(1), and 723.032(2), *Fla. Stat.*

**C.** **Further circumvention of statutory regulations:**

**1.** **Rejection of Plaintiffs' park lot rental comparables**

49. Since 2016, the Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, or MHC Operating at every Fall statutory negotiating and mediation meetings have repeatedly and flatly rejected the Harbor View HOA's submission of other park comparables, in violation of §§ 723.037 and 723.033(5) , *Fla. Stat.*, and the express statutory public policy that encourages the good faith exchange and discussion regarding comparable parks in review of the lot rental amounts in the Park.

50. Since 2016, the Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating have simply ignored the Harbor View HOA's submission of Park comparables and refuse to discuss or even consider the Harbor View HOA's submission of Park comparables, thereby rendering the entire statutory meeting and negotiation process as futile efffort by the Harbor View HOA.

**2.** **Imposition of illegal fees and charges**

51. The following fees and charges "authorized" by Section 9-A of the Prospectus were implemented or are enforced in an illegal, discriminatory, retaliatory, or unreasonable manner by the Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating in violation of the Florida and United States Constitution and statutes, including the Florida Mobile Home Act, §§ 723.003(1), 723.003(20), 723.016(4), 723.017, 723.021, 723.022, 723.025, 723.031, 723.032, 723.035, 723.037, 723.041, 723.051, 723.054, 723.058, 723.059, 723.061, 723.0615, and 723.071, *Fla. Stat.*, or otherwise unconscionable and oppressive:

- Residency Application Fee;
- Additional Occupant/Guest (monthly) Fee;
- Delinquent Lot Rental Amount Fee;
- Recreation Hall Use Fee;
- Lot Restoration Deposit;
- Rules and Regulations Enforcement Fee;
- Lot/Lawn Maintenance Fee;
- Excess Lawn Watering Fee;
- Special Service Fee;
- Governmental Regulation Violation Charge;
- Pest Control Fee;
- Utility Repair Fee; and
- Pet Permit Fee.

**3.      Imposition of illegal conditions upon resale**

52.      The following provisions of Section 9-G of the Prospectus were implemented or are enforced in an illegal, discriminatory, retaliatory, or unreasonable manner by the Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating in violation of the Florida and United States Constitution and statutes, including the Florida Mobile Home Act, §§ 723.003(1), 723.003(20), 723.016(4), 723.017, 723.021, 723.022, 723.025, 723.031, 723.032, 723.035, 723.037, 723.041, 723.051, 723.054, 723.058, 723.059, 723.061, 723.0615, and 723.071 *Fla. Stat.*, or otherwise unconscionable and oppressive:

- Seller must provide written advance notification of sale or transfer;
- Seller must get written approval of manager of home condition;
- Seller must permit exterior inspection of home prior to sale;
- Seller must bring home into "compliance" prior to closing; and
- Buyers must furnish picture identification card and a driver's license, passport, or other governmental documentation.

53.      The Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney

Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating applied or apply a discriminatory policy or practice that:

- excludes prospective homeowners and other persons, including spouses, family members, adult children, caregivers, cohabitants and occupants with prior criminal convictions;

- imposes a blanket prohibition on any person with any conviction record – no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then;

- refuse to show or prove that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest;

- are unable to show or prove their policy accurately distinguishes between criminal conduct that indicates a demonstrable risk to resident safety and/or property and criminal conduct that does not;

- fail to consider the nature, severity, and recency of criminal conduct is unlikely to be proven necessary to serve a substantial, legitimate, nondiscriminatory interest;

- refuse to make such a determination on a case-by-case basis.

54. The conduct of the Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating is in violation of §§ 723.061(1)(b), 723.059(1), *Fla. Stat.*, 42 U.S.C. §§ 3601 *et seq.*, the Fair Housing Act, §§ 760.23 and 760.35, *et seq., Fla. Stat.*, Florida's fair housing laws, and §§760.07, and 760.08, *et seq., Fla. Stat.,* Florida's laws prohibiting discrimination by places of public accommodation.

###### 4. Diverting resales to the benefit of the Defendants

55.     Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating routinely encouraged or encourage Park management or operators to divert Plaintiffs seeking approval to purchase a resale mobile home in the Park from an individual homeowner or through an outside third party realtor to instead purchase a different resale home through the Defendants. The consequence of Defendants' deceit and manipulation is reduced resales of homes through outside realtors.

###### 5. Hyper-technical rule violations and illegal evictions

56.     Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, MHC Operating, routinely encouraged or encourage Park management or operators to issue illegal and hyper-technical, unreasonable, discriminatory, and retaliatory rule violation notices to bully, harass, and retaliate against Plaintiffs who support the Harbor View HOA in violation of § 723.0615, *Fla. Stat.*

57.     Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, Harbor View MHC, Equity LifeStyle, and MHC Operating encouraged or encourage Defendants Allen Bobo and the Lutz Bobo Law Firm to pursue eviction lawsuits against Plaintiffs for illegal and hyper-technical, unreasonable, discriminatory, and retaliatory rule violation notices causing Plaintiffs to lose their home in a resulting eviction lawsuit with associated oppressive attorneys' fees and costs of prosecution.

###### 6. Deprive Plaintiffs of a handicap accessible Park clubhouse

58.     Many of the elderly Plaintiff mobile homeowners are disabled and have mobility and accessibility challenges. The Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, Harbor View MHC, Equity LifeStyle, and MHC Operating

refuse to make even common areas of public accommodation ADA compliant. In response to the Plaintiffs' expressed concerns, the Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, Harbor View MHC, Equity LifeStyle, and MHC Operating assert or asserted that the Americans with Disabilities Act is inapplicable to the Park and refuse to discuss it further.

**7.    Concealed identities of resale mobile home purchasers**

59.    Despite repeated requests by the Harbor View HOA and the Plaintiffs, the Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, Harbor View MHC, Equity LifeStyle, and MHC Operating refused or refuse to provide the names and addresses of resale home purchasers in the Park, citing in support of their refusal a vague assertion of "privacy concerns." The effect of such a refusal marginalizes the Harbor View HOA and impairs the discharge of the Harbor View HOA's fiduciary duties to the Plaintiffs.

**8.    Deteriorated seawalls, degraded lots, and houses sinking**

60.    There are a minimum of 204 regular and nine water front lots (on Elderberry) with 50 feet of seawall frontage. There are also a minimum of 22 corner and end lots with 150' seawall frontage, for a total of more than 50% of the Park with seawall frontage.

61.    Of the more than 250 water front lots in the Park, all have experienced, are experiencing, and expect to experience serious lot erosion, deterioration, and degradation. The majority of the water front lots have no seawalls or bulkheads to prevent erosion and deterioration. Defendants Harbor View MHC, Equity LifeStyle, and MHC Operating allowed the initial construction of the Park seawalls by the homeowners without adequate supervision, guidance, or even marine products. The existing seawalls have not been maintained and now require metal sheet piling and dead men back filing. The bed of the

adjacent canals has dropped causing a swifter water flow and consequent faster erosion under the existing seawalls and their existing inadequate PVC sheet piling. None of the seawalls have a requisite one foot concrete cap along the top length of the seawall.

62.     Lots abutting the seawalls and canals have receded extensively and degraded to the point of being a safety hazard and an imminent threat to the integrity of the houses on those lots. In some instances, the back of the homes are within five to eight feet of the edge of the canal and or degraded seawalls. Some homeowners adjacent to the canals report a loss of as much as a foot of their lot from erosion in the last 18 months.

63.     More than thirty lots in the Park near the canals also experience repeated flooding with attendant damage to their homes and interference with their access and enjoyment of their homes. Some homeowners have had to have their sinking homes professionally leveled at great expense.

64.     On April 11, 2005 Defendant Harbor View MHC entered into a mediated lot rental agreement with the Harbor View HOA as a settlement of a then-pending lawsuit. As part of the settlement agreement, Defendant Harbor View MHC agreed, *inter alia*, to spend "... at least $300,000 [to repair or replace seawalls throughout the Park] and to be completed by 12/21/06." Defendant Harbor View MHC also agreed to make "Utility repairs and drainage upgrades (Shut-off valves and storm drains) - Spending at least $35,000 and completed by 12/31/04." Neither of these promises in 2005 were fulfilled. Since then, Defendants Harbor View MHC, Equity LifeStyle, MHC Operating, and the Individual Defendants have repeatedly reaffirmed, most recently in November 2019, their intention to make a Park-wide repair or replacement of the seawalls but as of the date of the filing of this Complaint, they have again not committed to either a schedule of repair or replacement or effected such efforts.

## VI.    CLASS ACTION ALLEGATIONS

### A.    Plaintiff Class

64.    Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to *Fed. R. Civil P.* 23.

65.    The proposed Class consists of over 900 largely elderly current, former, and future mobile homeowners in the Harbor View Mobile Home Park from 2009 to the present with substantially similar underlying mobile home lot rental agreements with unreasonable rules and regulations requiring the mobile homeowners to:

- forfeit the protection of significant statutory regulations under Chapter 723, *Fla. Stat.*, the Florida Mobile Home Act, and under Federal and Florida law;
- pay illegal fees or charges;
- be subject to illegal conditions upon resale;
- be subject to hyper-technical rule violations and illegal evictions;
- find their resales diverted by illegal manipulation of the approval process; and
- pay unreasonably higher lot rent and ad valorem tax pass-ons.

### B.    Disability Subclass

66.    The subclass includes those elderly and disabled Plaintiff homeowners who have suffered the deprivation or expect to suffer the deprivation of a handicap accessible Park clubhouse, facilities, and common areas.

67.    Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that market or sell homes in the Park, the judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

68.     This action is properly brought as a class action because:

(a)     The proposed Class is so numerous and geographically dispersed throughout the United States, Canada, and Europe that the joinder of all Class Members is impracticable. The number of Class members is approximately 900 persons, and is expected to grow as homes in the Park are resold. Many of the Class Members are seasonal residents of Florida and reside in other portions of the United States and Canada during the remainder of the year;

(b)     The disposition of Plaintiffs' and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same or similar fashion and uniform manner;

(d)     There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include but are not limited to:

1.     Whether Defendants violated 18 U.S.C. § 1962;

2.     Whether Defendants violated Title 3 of the ADA - 42 U.S.C. § 12181 *et seq.*;

3.     Whether Defendants violated 42 U.S.C. §§ 3601 et seq., the Fair Housing Act;

4     Whether the Defendants violated Florida's fair housing laws, §§ 760.23 and 760.35, *et seq., Fla. Stat.*;

5.     Whether the Defendants violated Florida's laws prohibiting discrimination by places of public accommodation, §§760.07, and 760.08, *et seq., Fla. Stat.*;

6.     Whether Defendants violated the Florida Mobile Home Act, Chapter 723, *Fla. Stat.*;

7.     Whether Defendants violated the Florida Deceptive and

Unfair Trade Practices Act (FDUTPA), Part II, Chapter 501, *Fla. Stat.*;

8.      Whether Defendants exploited individuals over the age of 65 in violation of §§ 812.014, 812.0145, *Fla. Stat.*

9.      Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

10.      Whether Plaintiffs and Class Members are entitled to an award of treble damages, punitive damages, attorneys' fees and costs; and

11.      Whether, Plaintiffs and Class Members are entitled to equitable relief, and if so, the nature of such relief.

(e)      Plaintiffs' claims are typical of the claims of the members of the proposed Class. Plaintiffs and Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)      Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests antagonistic to those of the other Class Members, and Plaintiffs have retained an attorney experienced in consumer class actions and complex litigation as counsel;

(g)      A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1.      Given the size of individual Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2. This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

3. Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of their wrongful conduct; and

4. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

69. Defendants and their agents had, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the class action.

70. Plaintiffs seek damages, equitable relief, attorneys' fees, and costs on behalf of the Class on grounds generally applicable to the entire proposed Class.

## VII.    MAIL AND WIRE FRAUD

71. Defendants (and their co-conspirators/agents) engaged in a scheme to unlawfully defraud Plaintiffs of their money or property through fraudulent, illegal, and conspiratorial acts to:

- sell or transfer the Park in violation of the Plaintiff homeowners' right statutory rights and of first refusal in violation of § 723.071, *Fla. Stat.*;

- coerce and defraud the elderly Plaintiffs into accepting an illegal 2015 long term lot rental agreement. In 2018, the Defendants attempted to coerce and defraud the Plaintiffs into accepting another illegal long term lot

rental agreement;

- compel the Plaintiffs to forfeit the protection of statutory regulations under Chapter 723, *Fla. Stat.*, the Florida Mobile Home Act, and under Federal and Florida law, including:

    1. rejection of the Harbor View HOA's lot rental comparables;

    2. imposition of illegal fees and charges;

    3. imposition of illegal conditions upon resale;

    4. diversion of the Plaintiffs' resales by illegal manipulation of the approval process;

    5. frustration of home resales by a blanket prohibition for prospective homeowners with a prior criminal conviction;

    6. subjecting Plaintiffs to hyper-technical rule violations and illegal evictions;

    7. depriving the elderly disabled Plaintiffs of a handicap accessible Park clubhouse, facilities, and common areas;

    8. impaired the representative Harbor View HOA's discharge of its fiduciary duty to the Plaintiff homeowners by concealing the identities of resale purchasers on the pretext of privacy regulation;

    9. failing to maintain the Park stormwater drainage and electrical connections and attendant utility systems in violation of § 723.022(4), *Fla. Stat.*; and

    10. failing to repair or replace seawalls or otherwise prevent the deterioration or degradation of Plaintiffs' lots and the sinking of some Plaintiffs' homes.

Defendants (and their co-conspirators/agents) knowingly devised or

knowingly participated in this scheme or artifice to defraud Plaintiffs or to obtain the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, material omissions, or promises.

72.     Defendants (and their co-conspirators/agents) could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

73.     In particular, Defendants (and their co-conspirators/agents) knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia,* the assumption of lease, prospectus receipt documents and written lot rental agreements used by the Defendants which incorporated fraudulent representations or concealed through omissions regarding sale or transfer of the Park in violation of Plaintiffs' right of first refusal, defrauded the Plaintiffs into accepting an illegal long term agreement, further circumvent statutory regulations including, but not limited to: rejection of the Harbor View HOA's park comparables, charge the Plaintiffs illegal fees, impose illegal and discriminatory conditions upon resale, divert resales and encourage hyper technical and illegal evictions to the benefit of the Defendants, and fail to maintain the Park stormwater drainage and electrical connections and attendant utility systems, and fail to maintain seawalls and degraded lots.

74.     Defendants (and their co-conspirators/agents) acting singly and in concert, personally or through their agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud the Plaintiffs within the meaning of 18 U.S.C. §§ 1341 and 1343.

75.     It is not possible for Plaintiff mobile homeowners to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and

concealed the scheme because the particulars of many communications are within the exclusive control and within the exclusive knowledge of Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating (and their co-conspirators/agents) other presently unknown individuals. Plaintiff mobile homeowners and the Harbor View HOA know that Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating (and their co-conspirators/agents) have communicated using the U.S. Postal service with:

        a.      regulators in the Florida Department of Business and Professional Regulation related to the approval, recordation, and dissemination of lot rental increase notices, prospectuses, and lot rental agreements;

        b.      the putative class of mobile homeowners related to initial sales and closing documents, including current and future payment of increased lot rental and ad valorem, fire and stormwater tax pass-ons, and lot rental categorization;

        c.      the putative class of mobile homeowners related to ongoing annual rent increases and increased ad valorem tax pass-ons, and changes to rules and regulations).

Documents related to those communications using the U.S. Postal service are in the control and custody of the Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating (and their co-conspirators/agents) and are expected to be the focus of discovery.

76.      By way of example, however, Defendants (and their co-conspirators/ agents) specifically used the U.S. Postal Service or interstate wires or caused the U.S. Postal Service or interstate wires to deliver each and every telephone call, email, and letter

described in paragraphs (*supra*, ¶¶ 19 to 75).

77.     Upon information and belief, some of the wire communications described above occurred between persons in the same state but crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication.

78.     Each and every use of the U.S. Postal Service or interstate wires described above was committed by Defendants and their co-conspirators/agents with the specific intent to defraud Plaintiffs or for obtaining the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, material omissions or promises. Defendants and their co-conspirators'/agents' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B) or "criminal activity" as defined by *Fla. Stat.* § 772.102(b).

79.     Plaintiffs purchased their mobile homes and entered into a long-term lot rental agreement not knowing that the Defendants fraudulently conspired to unlawfully defraud Plaintiffs of their money or property through circumvention of statutory regulations.

80.     Defendants' scheme to defraud was designed to victimize elderly homebuyers. As such, Defendants intended to take advantage of Plaintiffs' perceived ignorance or gullibility and intended to prey on Plaintiffs' infirmities.

81.     Defendants' scheme further deprives the Plaintiffs of their intangible right to honest services under The Florida Mobile Home Act, in which the mails were caused to be used to defraud and deceive the Plaintiffs through materially false and fraudulent misrepresentations and omissions. The Plaintiffs and Defendants have a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise. The relationship need not be a formal, or classic, fiduciary relationship. Rather, courts have concluded that 18 U.S.C. §§ 1341 and 1346 similarly reach those who assume a comparable duty of

loyalty, trust, and confidence, the material breach of which, with the intent to defraud, deprives the victim of the intangible right to honest services. *U.S. v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012), *cert. den.*, 568 U.S. 1126 (2013).

## IX.    CLAIMS FOR RELIEF

**Count One – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – *Fla. Stat.* § 772.103(3) by Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo

82.      Plaintiffs reallege and restate paragraphs 1 through 81.

### *Zimmerman-Martin-Scott-Morris-Bobo Enterprise*

83.      Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that they were "a group of individuals associated in fact" (hereinafter referred to as the "*Zimmerman-Martin-Scott-Morris-Bobo Enterprise*").

> a.    Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo shared the common purposes of developing Harbor View Mobile Home Park and defrauding Plaintiffs of money or property through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution.

> b.    Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo were related in that they are business partners and/ or associates and owed to Plaintiffs a duty of good faith and fair dealing under § 723.021, *Fla. Stat.*

> c.    The *Zimmerman-Martin-Scott-Morris-Bobo Enterprise* possessed

sufficient longevity for the members to carry out their purpose(s) in that the *Zimmerman-Martin-Scott-Morris-Bobo Enterprise* existed from 2009 through 2019 (at a minimum).

d.     Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Zimmerman-Martin-Scott-Morris-Bobo Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 71 to 81).

**Alternative 1: *Harbor View MHC Enterprise***

84.     In the alternative[1] to paragraph 83, between 2009 and 2019 (at a minimum), Harbor View MHC constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that it was a legal entity.

>     a.     Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Harbor View MHC through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 71 to 81).

---

1       *Fed.R.Civ.P.* 8(d)(2): <u>*Alternative Statements of a Claim or Defense.*</u> "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *See Jackson v. Segwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466, 480 (6th Cir. 2012), *reh'g en banc granted, opinion vacated own other grounds* ( Jan. 18, 2013), *on reh'g sub nom. Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) [**The district court assumed that the pleadings adequately established an enterprise, although it deemed such a determination highly questionable in part due to the plaintiffs' choice to plead six enterprises in the alternative.** *Jackson*, 2010 WL 931864, at *23. **Equivocation about the constitution of the enterprise, however, does not undermine the plausibility of the pleadings.** "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Fed.R.Civ.P.* 8(d)(2); *Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir.2006) (**"Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative."** (Emphasis Added)

**Alternative 2: *Harbor View Mobile Home Park Enterprise***

85.     In the alternative to paragraphs 83 and 84, Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm, constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that they were "a group of individuals associated in fact" (hereinafter referred to as the "*Harbor View Mobile Home Park Enterprise*").

      a.    Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm, shared the common purposes of defrauding Plaintiffs of money or property through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution.

      b.    Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm were related in that they are all alter egos of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo.

      c.    The *Harbor View Mobile Home Park Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Harbor View Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

      d.    Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo, are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Harbor View Mobile Home Park Enterprise* through

a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 71 to 81).

**Alternative 3:** *Bobo Enterprise*

86.     In the alternative to paragraphs 83 and 84, between 2009 and 2019 (at a minimum), Allen Bobo was an individual who constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3).

   a.     Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Allen Bobo through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 71 to 81).

**Alternative 4:** *Lutz Bobo Law Firm Enterprise*

87.     In the alternative to paragraphs 83 and 84, between 2009 and 2019 (at a minimum), the Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that it

was a legal entity.

a. Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the Lutz Bobo Law Firm through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 71 to 81).

88.    At all relevant times, the enterprises alleged in paragraphs 83 through 87 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

89.    All of the acts of racketeering/crime described in paragraphs 71 to 81 were related so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), in that their common purpose was to defraud Plaintiffs of money and property through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution. Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs were the victims of the acts of racketeering/crime; and/or the acts of racketeering/crime were otherwise interrelated by distinguishing characteristics and were not isolated events.

90.     All of the acts of racketeering described in paragraphs 71 to 81 were continuous so as to form a pattern of racketeering activity in that Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo engaged in the acts of racketeering/crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo do business and, thus, threaten to continue indefinitely.

91.     As a direct and proximate result of, and by reason of, the activities of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo and their conduct in violation of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees and reasonable experts' fees.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.     Judgment be entered in favor of Plaintiffs and against Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.      Plaintiffs be awarded treble damages to the extent permitted by 18 U.S.C. § 1964(c) and § 772.104, *Fla. Stat.*;

c.      Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

d.      Plaintiffs be awarded prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

e.      Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

f.      Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c);

g.      Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by or for the benefit of the Defendants;

h.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

i.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Two – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – *Fla. Stat.* § 772.103(3) by Defendants Harbor View
MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm

     92.     Plaintiffs reallege and restate paragraphs 1 through 81.

### *Corporate Enterprise*

     93.     Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo

Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4)

and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that they were "a group of

individuals associated in fact" (hereinafter referred to as the "*Corporate Enterprise*").

     a.     Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz
Bobo Law Firm shared the common purposes of developing Harbor
View Mobile Home Park and defrauding Plaintiffs of money or
property through the fraudulent sale or transfer of the Park in
violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal
long-term agreement, and further circumvention of statutory
regulations and the Florida and United States Constitution.

     b.     Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz
Bobo Law Firm were related in that they are all controlled by
Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris,
and Allen Bobo who owe to Plaintiffs a duty of good faith and fair
dealing under § 723.021, *Fla. Stat.*

     c.     The *Corporate Enterprise* possessed sufficient longevity for the
members to carry out their purpose(s) in that the *Corporate
Enterprise* existed from 2009 through 2019 (at a minimum).

     d.     Harbor View MHC, Equity LifeStyle, MHC Operating, and
Lutz Bobo Law Firm are each a "person," within the meaning of

18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Corporate Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud (as described in paragraphs 71 to 81).

**Alternative 1: *Harbor View MHC Enterprise***

94.     In the alternative to paragraph 93, between 2009 and 2019 (at a minimum), Harbor View MHC constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that it was a legal entity.

> a.     Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Harbor View MHC through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 71 to 81).

**Alternative 2: *Harbor View Mobile Home Park Enterprise***

95.     In the alternative to paragraphs 93 and 94**,** Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that they were "a group of individuals associated in "fact" (hereinafter referred to as the "*Harbor View Mobile Home Park Enterprise*").

   a.  Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm shared the common purposes of defrauding Plaintiffs of money or property through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution.

   b.  Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm were related in that they are all alter egos of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo.

   c.  The *Harbor View Mobile Home Park Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Harbor View Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

   d.  Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Harbor View Mobile Home Park*

*Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 71 to 81).

**Alternative 3: *Bobo Enterprise***

96.　　In the alternative to paragraphs 93 and 94, between 2009 and 2019, Allen Bobo was an individual who constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3).

　　　　a.　　Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Allen Bobo through a pattern of activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b)(as described in paragraphs 71 to 81).

**Alternative 4: *Lutz Bobo Law Firm Enterprise***

97.　　In the alternative to paragraphs 93 and 94 between 2009 and 2019 (at a minimum), the Lutz Bobo Law Firm constituted an "enterprise," within the meaning of

18 U.S.C. §§ 1961(4) and 1962(c) and *Fla. Stat.* §§ 772.102(3) and 772.103(3), in that it was a legal entity.

    a.      Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the Lutz Bobo Law Firm through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) and 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 71 to 81).

98.    At all relevant times, the enterprises alleged in paragraphs 93 through 97 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

99.    All of the acts of racketeering described in paragraphs 71 to 81 were related so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), in that their common purpose was to defraud Plaintiffs of money and property through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution; their common result was to defraud Plaintiffs of money and property through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention

of statutory regulations and the Florida and United States Constitution. Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

100.    All of the acts of racketeering described in paragraphs 71 to 81 were continuous so as to form a pattern of racketeering activity in that Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm engaged in the acts of racketeering/crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm do business and, thus, threaten to continue indefinitely.

101.    As a direct and proximate result of, and by reason of, the activities of Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm and their conduct in violation of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a. Judgment be entered in favor of Plaintiffs and against Defendants Harbor View MHC, Equity LifeStyle, MHC Operating, and the Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b. Plaintiffs be awarded treble damages to the extent permitted by 18 U.S.C. § 1964(c) and § 772.104, *Fla. Stat.*;

c. Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

d. Plaintiffs be awarded prejudgment interest on the amount of damages and/ or losses that Plaintiffs have sustained;

e. Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

f. Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c);

g. Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by, or for the benefit of, the Defendants;

h. Plaintiffs be awarded a judgment piercing of any limited liability veil;

i. Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Three – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(d) – *Fla. Stat.* § 772.103(4) by Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo

101.     Plaintiffs reallege and restate paragraphs 1 through 81.

102.     As alleged in Count One, one or more of the following individuals violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3): Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo. Any of these person(s) who violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3) are referred to as the "Violator(s)" for the remainder of this Count.

103.     Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo conspired with the Violator(s) to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra***, ¶¶** 83-87) through a pattern of racketeering activity or criminal activity (*see* 71 to 81) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo intended to further an endeavor of the Violator(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

104.     Plaintiffs were injured by Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 71 to 81).

105.     As a direct and proximate result of, and by reason of, the activities of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo and their conduct in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4), Plaintiffs

were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.     Judgment be entered in favor of Plaintiffs and against Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.     Plaintiffs be awarded treble damages to the extent permitted by 18 U.S.C. § 1964(c) and § 772.104, *Fla. Stat.*;

c.     Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

d.     Plaintiffs be awarded prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

e.     Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

f.     Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c);

g.     Plaintiffs be awarded a judgment eliminating or vacating any recorded lien

recorded by, or for the benefit of, the Defendants;

      h.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

      i.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Four – RICO Conspiracy; Racketeer Influenced and Corrupt Organizations Act** - Violation of 18 U.S.C. § 1962(d) – *Fla. Stat.* § 772.103(4) by Defendants Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm

106.      Plaintiffs reallege and restate paragraphs 1 through 81.

107.      As alleged in Count One, the following individuals violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3):Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, and Allen Bobo.

### Harbor View MHC, Equity LifeStyle, MH Operating, or Lutz Bobo Law Firm conspired with Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo

108.      Harbor View MHC, Equity LifeStyle, MHC Operating, or Lutz Bobo Law Firm conspired with Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*see supra*, ¶¶ 83-87) through a pattern of racketeering activity or criminal activity (*see supra*, ¶¶ 71 to 81) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Harbor View MHC, Equity LifeStyle, MHC Operating, or Lutz Bobo Law Firm intended to further an endeavor of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

### Equity LifeStyle conspired with Allen Bobo, Eric Zimmerman, or Stanley Martin

109.      Equity LifeStyle conspired with Allen Bobo, Eric Zimmerman, or Stanley

Martin to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*see supra*, ¶¶ 83-87) through a pattern of racketeering activity or criminal activity (*see supra*, ¶¶ 71 to 81) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Equity LifeStyle intended to further an endeavor of Allen Bobo, Eric Zimmerman, or Stanley Martin which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

**Harbor View MHC conspired with Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo**

110.     Harbor View MHC conspired with Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*see supra*, ¶¶ 83-87) through a pattern of racketeering activity or criminal activity (*see supra*, ¶¶ 71 to 81) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Harbor View MHC intended to further an endeavor of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

**MHC Operating conspired with Allen Bobo**

111.     MHC Operating conspired with Allen Bobo to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*see supra*, ¶¶ 83-87) through a pattern of racketeering activity or criminal activity (*see supra*, ¶¶ 71 to 81) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, MHC Operating intended to further an endeavor of Allen Bobo which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

112.    Plaintiffs were injured by Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 71 to 81, *supra*).

113.    As a direct and proximate result of, and by reason of, the activities of Harbor View MHC, Equity LifeStyle, MHC Operating, and Lutz Bobo Law Firm, and their conduct in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.103(3). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, or Allen Bobo; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.    Judgment be entered in favor of Plaintiffs and against Defendants Harbor View MHC, Equity LifeStyle, MHC Operating, and the Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.    Plaintiffs be awarded treble damages to the extent permitted by 18 U.S.C. § 1964(c) and § 772.104, *Fla. Stat.*;

c.      Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

d.      Plaintiffs be awarded prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

e.      Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

f.      Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c);

g.      Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by, or for the benefit of, the Defendants;

h.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

i.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Five – Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
Violation of §§ 501.204, and 501.211, *Fla. Stat.* by all Defendants

114.      Plaintiffs reallege and restate paragraphs 1 through 71.

115.      The Defendants have violated §§ 501.204 and 501.211, *Fla. Stat.*, which prohibit as unlawful unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

116.      The Florida Legislature expressly stated that §§ 501.201, *Fla. Stat., et. seq.*, is remedial. Section 501.202, *Fla. Stat.*, reads: "The provisions of this part shall be construed liberally to promote the following policies:

*** 

(1)      To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.

(2)      To protect the consuming public and legitimate business

enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

(3)     To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection."

***

117.     In 1993 the Florida Legislature amended the definition of "Trade or commerce" in § 501.203(8), *Fla. Stat.,* to include services ("... any good or service..."), thereby overruling *Florida v. De Anza Corp.*, 416 So.2d 1173 (Fla. 5th DCA), *pet. den.*, 424 So.2d 763 (Fla. 1982). *De Anza* was also disapproved by the Florida Supreme Court in *Lanca Homeowners, Inc. v. New Port Richey Cascade of Palm Beach, Ltd.*, 541 So.2d 1121 (Fla. 1988), *cert den.*, 493 U.S. 964 (1989).

118.     The 1993 amendment of § 501.203(8), *Fla. Stat.,* also expansively defined "Trade or commerce" to mean "... the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of *any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated*. 'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity. (Emphasis added)

119.     As mobile homeowners and renters of the lot beneath their homes, the Plaintiffs are consumers.

120.     Section 501.203(3), *Fla. Stat.,* defined a "Violation of this part" to mean "... any violation of this act and may be based upon any of the following: ...

***

(b)     The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

(c)     Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

***

121.    Harbor View MHC has continued to send Plaintiffs monthly bills, invoices and demands for payment of illegal higher lot rent and ad valorem pass-ons through the fraudulent sale or transfer of the Park in violation of Plaintiffs′ rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution.

122.    Defendants continue to assert, enforce, and threaten their improper authority to assess and lien to coerce payment of illegal higher lot rent and ad valorem pass-ons through the fraudulent sale or transfer of the Park in violation of Plaintiffs′ rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution pursuant to the provisions of the lot rental agreement in violation of §§ 723.021, 501.204, and 501.211, *Fla. Stat.*

123.    Defendants conspire, participate, joined together or act in concert to violate §§ 501.204, 501.211, 723.021, and 723.059, *Fla. Stat.*, to benefit themselves, each other, and Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, MHC Operating, Allen Bobo, Lutz Bobo Law Firm**.**

124.    Defendants, their agents, officers, and directors each participated and were aware of the repeated and continuing violations of §§ 501.204, 501.211, 723.021, and 723.059, *Fla. Stat.*

125.    Defendants' acts caused or were likely to cause unjustified injury to the

Plaintiffs - namely, injury that is substantial, not outweighed by countervailing benefits to the Plaintiffs or competition that the act or practice produces, and an injury that the Plaintiffs could not reasonably have avoided.

126.    Defendants' acts offend public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to the Plaintiffs.

127.    As a direct and proximate result of, and by reason of, the activities of the Defendants in violation of *Fla. Stat.* §§ 501.204, and 501.211, Plaintiffs were injured and suffered actual damages in excess of $4,000,000 to the extent their monies were illegally transferred to the Defendants via payment of the higher lot rent and ad valorem pass-ons through the fraudulent sale or transfer of the Park in violation of Plaintiffs' rights under §723.071, *Fla. Stat.*, the illegal long-term agreement, and further circumvention of statutory regulations and the Florida and United States Constitution to the extent that Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by the Defendants; to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them; and to the extent that Plaintiffs expect to suffer a total of over 3,000,000 over the expected 10 years of a typical mobile home park turnover. Plaintiffs are, therefore, entitled to recover the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

128.    Plaintiffs have been aggrieved by the Defendants' violation of *Fla. Stat.* §§ 501.204, 501.211, 723.021, and 723.059, *Fla. Stat.*

129.    Plaintiffs also seek declaratory judgment under § 501.211(1), *Fla. Stat.* Section 501.211(1), *Fla. Stat.*, reads that: "... anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

130.     As a result, the Plaintiffs are in doubt as to their legal rights under the law. There exists a present, actual need for declaratory relief concerning these bona fide disputes.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.     Judgment be entered in favor of Plaintiffs and against Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, MHC Operating, Allen Bobo, and the Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.     Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

c.     Plaintiffs be awarded actual damages under *Fla. Stat.* §501.211;

d.     Plaintiffs be awarded prejudgment interest on the amount of damages and/ or losses that Plaintiffs have sustained;

e.     Plaintiffs be awarded a judgment declaring that the Defendants' conduct is prohibited by Chapters 501, *Fla. Stat.*;

f.     Plaintiffs be awarded a judgment declaring that the Defendants violated §§ 501.204, 501.211, *Fla. Stat.*

g.     Plaintiffs be awarded a judgment declaring under § 501.211(1), *Fla. Stat.*, that Defendants' acts or practices violate Chapter 501 Part II, *Fla. Stat.*;

h.     Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

i.     Plaintiffs be awarded injunctive relief prohibiting defendants who have violated, are violating, or likely to violate Chapter 501 Part II, *Fla. Stat.*;

j.     Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to §§ 501.2105, 501.211, 723.068, *Fla. Stat.*;

k.      Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by, or for the benefit of, the Defendants;

l.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

m.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Six – Denial of Rights of Access under Americans with Disabilities Act ("ADA") -** Violations of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) and related Florida statutes by Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating

131.      Plaintiffs reallege and restate paragraphs 1 through 18, and 58.

132.      Harbor View HOA is an incorporated mobile homeowner association and the legal representative under § 723.075 (1), *Fla. Stat.*, of a class of over 900 elderly current, former, and future bona fide mobile homeowners in the Park. The Park is an age 55 and older mobile home park with 471 mobile home lots.

133.      Harbor View HOA represents all of the mobile homeowners in the Park "... in all matters relating to the Florida Mobile Home Act." *See* §§ 723.075(1) and 723.076(1); *see also Rule* 1.222, *Fla. R. Civil P.*[2]

134.      The officers and directors of the Harbor View HOA have a fiduciary

---

[2]      § 723.075(1); *see also Rule 1.222: Fla. R. Civ. P.,* Mobile Homeowners' Associations, which reads:

A mobile homeowners' association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all homeowners concerning matters of common interest, including, but not limited to: the common property; structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving the park property; and protests of ad valorem taxes on commonly used facilities. If the association has the authority to maintain a class action under this rule, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action under this. Nothing in this Amended Complaint limits any statutory or common law right of any individual homeowner or class of homeowners to bring any action which may otherwise be available. An action under this rule shall not be subject to the requirements of rule 1.220.

*Lanca Homeowners, Inc. v. New Port Richey Cascade of Palm Beach, Ltd.*, 541 So.2d 1121 (Fla. 1988)("... we similarly note that the **unique features of mobile home residency call for an effective procedural format for resolving disputes between park owners and residents concerning matters of shared interest. Again, we recognize the usefulness of the policy sought to be asserted by the legislature.** Pursuant to Florida Rule of Judicial Administration 2.130(a), we adopt the following to be titled "*Mobile Homeowners' Association,*" to be numbered *Florida Rule of Civil Procedure 1.222*, and to be effective immediately....") (Emphasis Added)

relationship to the homeowners and must discharge their duties in good faith.[3]

135.    Harbor View HOA has the authority to initiate mediation and litigation on behalf of all of the homeowners regarding an increase in lot rental amount, reduction in services or utilities, or change of rules and regulations.[4]

136.    If the park owner offers the Park for sale to the general public or receives an "unsolicited" offer to purchase the Park, the Harbor View HOA has a right to be notified of the offer, the price and the terms and conditions of sale, and permitted 45 days to execute a contract meeting the price, terms and conditions.[5] Harbor View HOA has the express statutory right to negotiate for, acquire, and operate the mobile home park on behalf of the mobile homeowners.[6]

137.    The Plaintiff mobile homeowners are "elderly persons" as defined by Section 825.101( 4), *Fla. Stat.*, as persons " ... 60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the person to provide adequately for the person's own care or protection is impaired." The Plaintiff mobile homeowners have mobility, balance, gait, vision, and hearing difficulties. When traveling about in public, many Plaintiff mobile homeowners require the use of either walking canes or sticks, walkers, wheelchairs, audiovisual devices, and hearing aids. Consequently, many Plaintiff mobile homeowners are "physically disabled," as defined by all applicable Florida and United States laws, and a member of the public whose rights are protected by these laws.

138.    Plaintiff mobile homeowners suffer from low vision and age-related cognitive decline as a "qualified disability" under the ADA as defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h). They are substantially limited in performing one or

---

3        § 723.078(2)(c)8
4        § 723.037(1)
5        § 723.071(1)(a)
6        §§ 723.077(1), 723.079(1) and (3)

more major life activities, including but not limited to accurately visualizing their world, adequately traversing obstacles and walking without assistance.

139.     The Park clubhouse, main room with seating for 100 persons and dance floor, library, billiards area, pool, card and game room are public accommodations, open to the public, which is intended for nonresidential use and whose operation affects commerce.

140.     The Plaintiff mobile homeowners live in the Park and visit the Park facilities on a regular basis. Plaintiff mobile homeowners regularly encounter barriers (both physical and intangible) that interfered with - if not outright denied - their ability to use and enjoy the goods, services, privileges and accommodations offered at the Park. Plaintiff mobile homeowners personally encountered the following barriers at the Facility:

a)     The only ramp located at the right side of the Clubhouse parking area is improperly configured and contains no guide curbs;

b)     On numerous occasions during their visits to the Clubhouse, Plaintiff mobile homeowners experienced problems when transferring onto their wheelchair from their vehicle because of the configuration of the designated parking space and access aisle located next to it;

c)     During many visits to the office located inside the Clubhouse, Plaintiff mobile homeowners have attempted but been unable to enter the office because the door of the office is too narrow for a wheelchair;

d)     The public restrooms located inside the Clubhouse lack necessary wheelchair clearances to use the sink. Plaintiff mobile

homeowners experienced difficulty on many occasions while
trying to use the restroom in the four years preceding this action;

e)    The pool does not have a lift.

141.    Plaintiff mobile homeowners were, and continue to be deterred from visiting the Clubhouse because they know that the Clubhouse's goods, services, facilities, privileges, advantages, and accommodations deny full and equal access to Plaintiff mobile homeowners due to their physical disabilities. Plaintiff mobile homeowners have learned that the following additional barriers to their full and equal access exist at the Facility, each of which relates to his disabilities:

**Site Entrance Signage**

a)    Site informational signage was not provided directing to the accessible entrance and route of travel.

**Accessible Parking**

c)    Van accessible signage was not provided for the van accessible parking space.

d)    Accessible parking access aisles was not outlined in blue.

e)    Accessible parking signage mounted on the pole is not 80" minimum above the surface.

**Exterior Accessible Routes**

f)    A minimum of one accessible route was not provided from the public way to the accessible entrance.

g)    Sidewalk has raised lips that exceed 1/4" in height.

h)    Ramp at the end of the access aisle does not have edge protection on both sides of the ramp and exceeds 8.33%.

**Accessible Doors**

i)    Entrance door thresholds exceed 1/2″ in height.

j)    Entrance door landings exceed 2% slope.

k)    Entrance doors do not have the required smooth kick plate 10"
      high on the bottom of the doors.

**Restrooms**

m)    Side grab bars are not 48" long and extending a minimum of 24"
      in front of the toilet.

n)    Rear grab bar was not properly located on the wide side of the
      toilet.

o)    Soap dispenser was not located to be 40" maximum above floor
      to operable parts.

p)    Toilet paper dispenser was not located to be 7"- 9" in front of
      toilet.

q)    Plumbing and sharp objects under sink were not properly
      protected.

r)    Toilet was not offset to be 16"-18" from side wall.

s)    Proper floor clear area was not provided in front of the toilet for
      transfer space.

**General**

v)    There are no fire alarms, strobes, horns or sprinkler system in
      the main social events or large congregational ball room.

142.    Plaintiff mobile homeowners live at the Park and must have ongoing
access to the Clubhouse.

143.    Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View

MHC, Equity LifeStyle, and MHC Operating knew or should have known that these elements and areas of the Clubhouse were inaccessible, violate state and federal law, and interfere with or deny access to the physically disabled. Moreover, Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating have the financial resources to remove these barriers from the Park without much difficulty or expense, and make the Park accessible to the physically disabled. To date, however, Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

144.    At all relevant times, Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating have possessed and enjoyed sufficient control and authority to modify the Park to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design. Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating have not removed the impediments and have not modified the Park to conform to accessibility standards. Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating have intentionally maintained the Park in its current condition and have intentionally refrained from altering the Park so that it complies with the accessibility standards.

145.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

146.    Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating discriminated against Plaintiffs by

denying them "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Clubhouse during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

147. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where their removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

148. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id.* § 12182(b)(2)(A)(v).

149. Here, Plaintiffs allege that Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating can easily remove the architectural barriers at the Park without much difficulty or expense, and that Defendants Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating, when it was readily achievable to do so.

150. In the alternative, if it was not "readily achievable" for Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating to remove the Park's barriers, then Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Make an Altered Facility Accessible

151. Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating have made substantial alterations to the

Clubhouse since 2011 and have failed to make the altered Clubhouse accessible.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a. The Court issue a declaratory judgment in favor of Plaintiffs and against Defendants Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, and MHC Operating that Defendants violated the Plaintiffs' rights as guaranteed by the ADA;

b. Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

c. Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c); and §§ 501.2105, 501.211, 723.068, *Fla. Stat.*;

d. Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Seven – Florida Mobile Home Act - Breach of statutory duties and lot rental agreement -** Violation of Sections 723.022, 723.017, 723.021, 723.037, 723.068, 723.033(1)(f), 723.025, and 723.061(1)(c), *Fla. Stat.,* by all Defendants

153.    Plaintiffs reallege and restate paragraphs 1 through 71.

**Defendants failed to comply with requirements of applicable building, housing, and health codes**

154.    Section 723.022(1), *Fla. Stat.*, mandates that a "... mobile home park owner shall at all times ... [c]omply with the requirements of applicable building, housing, and health codes."

155.    Defendants have a continuing duty to comply with building, housing and health codes under § 723.022(1), *Fla. Stat.* Section 723.022(1) creates a statutory warranty of habitability. *Grant v. Thornton*, 749 So.2d 529 (Fla. 2nd DCA 1999) (in *dicta*, the *Grant* court noted that § 83.51, *Fla. Stat.*, requirement that a landlord comply with "... applicable building, housing, and health codes ..." had been said to "... create a statutory warranty of habitability."); *see also, Lifter, Inc. v. Varnado*, 480 So. 2d 1336 (Fla. 3d DCA 1985), *rev. dismissed*, 484 So. 2d 7 (Fla. 1986); *Mansur v. Eubanks*, 401 So. 2d 1328 (Fla. 1981); *See also Renken v. Ludwig*, 2002 Wash. App. LEXIS 322 (February 21, 2002). *See also Thomas v. Goudreault,* 163 Ariz. 159, 786 P.2d 1010 (Ariz. Ct. App. 1989).

156.    The Defendants have unreasonably failed to comply with the requirements of the applicable building, housing, and health codes by permitting extensive stormwater flooding of the lots and common areas in the Park.

157.    Section 723.022 imposes a continuing duty upon Defendants to provide a lot stable enough to support a mobile home.

158.    Under § 15C-1.0102(3), *Florida Administrative Code*, Defendants have a continuing duty to grade the area beneath and around the Plaintiffs' mobile home

and slope the grading so that water will not accumulate under the home. The pier

foundation must be placed on "... stable soil or compacted fill."

159.    The *Florida Administrative Code* also requires landlords to ensure that

sites rented for the purpose of installing mobile homes are strong enough to bear the

load. Section 15C-1.0102(3) required all park owners to ensure compaction and load-

bearing ability sufficient to meet the support requirements of the *Florida Building code*.

160.    Under § 64E-15.002(1)(a), *Florida Administrative Code*, Defendants have

a continuing duty to grade the park spaces so that water drainage will not cause standing

water under the unit.

161.    Under § 40C-42.026, *Florida Administrative Code*, Defendants have

a continuing duty to manage the storm water drainage system so that storm water

drainage will not cause standing water for greater than 72 hours. [Repealed 10/1/2013]

162.    The Park continues to experience periodic flooding as a result of

improper drainage. Excessive water collects in the common areas, on the mobile

home lot, and under, around, and between the Homeowners' homes. Improper

grading and fill prevents proper drainage of the storm water from under or around

the Homeowners' homes. The Defendants have allowed storm water to pool between

homes. The Defendants have allowed ankle deep storm water to pool in the driveways

and walkways leading to mobile homes.

163.    The Homeowners' homes and personal belongings are damaged by

excessive moisture and mold or mildew growth. Air conditioner compressors and

ductwork are damaged by excessive water pooling under, between and around homes.

The concrete slab base for the air conditioners sink and cease to be level. Exterior air

conditioner ducts are installed improperly along the ground allows moisture to enter

the duct and accumulate as mold or mildew.

164.     The Plaintiffs and Homeowners have reported to the Defendants numerous instances of:

     (a)    pooling of water under, around, and between the mobile homes;

     (b)    water and mold or mildew damage to the mobile homes and personal property;

     (c)    pooling of water in driveways and walkways leading to mobile homes;

     (d)    pooling has caused structural damage to tie-downs and anchoring systems of homes. The structural integrity of many homes has been severely compromised. Numerous homes have settling which causes damage to the home, ill-fitting doors, cabinets, windows, and frames and a severe reduction in resale value;

165.     The Defendants have breached their duty to the Homeowners by refusing to correct these flooding and drainage problems.

166.     The Defendants have breached their duty to permit the Homeowners to peacefully and quietly enjoy the possession of the premises.

167.     The Defendants breached their statutory warranty of habitability and duty by failing to properly construct and maintain the Park's storm water management system located in violation of building, housing and health codes. The defective and dangerous conditions of the premises constituted a nuisance within the meaning of § 823.01, *Fla. Stat.*, in that they deprived Homeowners of the safe, healthy, and comfortable use of the premises and disturbed the Homeowners' peaceful and quiet enjoyment of their lot and the Park.

**Defendants failed to maintain utility connections and systems for which the Park Owner is responsible in proper operating condition**

168.     The Defendants failed to maintain utility connections and systems for which the Park Owner is responsible in proper operating condition.

169.    Section 723.022(4), *Fla. Stat.*, mandates that a "... mobile home park owner shall at all times ... [m]aintain utility connections and systems for which the park owner is responsible in proper operating condition."

170.    Defendants have a continuing duty to maintain the stormwater drainage system in the Park, the Park electrical connections and systems, and their attendant utility connections and systems in proper operating condition under § 723.022(4), *Fla. Stat.*

171.    The Defendants have unreasonably failed to maintain the stormwater drainage system in the Park, the Park electrical connections and systems, and their attendant utility connections and systems in proper operating condition as evidenced by the extensive and repeated flooding of the lots and the Park common areas and deteriorated electrical connections leading to Plaintiffs' homes.

**Defendants failed to maintain the common areas in a good state of appearance, safety, and cleanliness**

172.    The Defendants failed to maintain the common areas in a good state of appearance, safety, and cleanliness.

173.    Section 723.022(2), *Fla. Stat.*, mandates that a "... mobile home park owner shall at all times ... [m]aintain the common areas in a good state of appearance, safety, and cleanliness."

174.    Defendants have a continuing duty to maintain the common areas in a good state of appearance, safety, and cleanliness under § 723.022(2), *Fla. Stat.*

175.    The Defendants have unreasonably failed to maintain the common areas in a good state of appearance, safety, and cleanliness as evidenced by the unreasonable elimination or reduction of services and facilities, including, but not limited to, the extensive and repeated flooding of the lots and the Park common areas.

**Defendants failed to maintain buildings and improvements in common areas in a good state of repair and maintenance**

176.     The Defendants failed to maintain buildings and improvements in common areas in a good state of repair and maintenance.

177.     Section 723.022(2), *Fla. Stat.*, mandates that a "... mobile home park owner shall at all times ... [m]aintain buildings and improvements in common areas in a good state of repair and maintenance...."

178.     Defendants have a continuing duty to maintain the buildings and improvements in common areas in a good state of repair and maintenance under § 723.022(2), *Fla. Stat.*

179.     The Defendants have unreasonably failed to maintain the buildings and improvements in common areas in a good state of repair and maintenance as evidenced by the unreasonable elimination or reduction of services and facilities, including, but not limited to, the extensive and repeated flooding of the lots and the Park common areas.

**Defendants failed to provide access to the common areas at all reasonable times for the benefit of the Park residents and their guests**

180.     The Defendants failed to provide access to the common areas at all reasonable times for the benefit of the Park residents and their guests.

181.     Section 723.022(3), *Fla. Stat.*, mandates that a "... mobile home park owner shall at all times ... [p]rovide access to the common areas, including buildings and improvements thereto, at all reasonable times for the benefit of the park residents and their guests."

182.     Defendants have a continuing duty to provide access to the common areas, including buildings and improvements thereto, at all reasonable times for the benefit of the park residents and their guests under § 723.022(3), *Fla. Stat.*

183.    The Defendants have unreasonably failed to provide access to the common areas, including buildings and improvements thereto, at all reasonable times for the benefit of the park residents and their guests as evidenced by the unreasonable elimination or reduction of services and facilities, including, but not limited to, the extensive and repeated flooding of the lots and the Park common areas, which interferes with the ingress and egress of the Homeowners and their guests to the lots and the common areas.

**Defendants failed to comply with properly promulgated Park rules and regulations**

184.    The Defendants failed to comply with properly promulgated Park rules and regulations.

185.    Section 723.022(5), *Fla. Stat.*, mandates that a "... mobile home park owner shall at all times ... comply with properly promulgated park rules and regulations." Section 723.022(5), *Fla. Stat.*, further mandates that a "... mobile home park owner shall at all times ... require other persons to ... comply therewith ...."

186.    Defendants have a continuing duty to comply with properly promulgated park rules and regulations under § 723.022(5), *Fla. Stat.*

187.    The Defendants have failed to comply with properly promulgated park rules and regulations as evidenced by the unreasonable elimination or reduction of services and facilities, including, but not limited to, the refusal to recognize the Adult Only" Retirement Community or 55 and older status of the Park.

**Defendants unreasonably disturb or breach the peace of the Park residents**

188.    The Defendants unreasonably disturb or breach the peace of the Park residents.

189.    Section 723.022(5), *Fla. Stat.*, mandates that a "... mobile home park

owner shall at all times ... not unreasonably disturb the park residents or constitute a breach of the peace." Section 723.022(5), *Fla. Stat.*, further mandates that a "... mobile home park owner shall at all times ... require other persons to ... not unreasonably disturb the park residents or constitute a breach of the peace."

190. Defendants have a continuing duty to not unreasonably disturb the park residents or constitute a breach of the peace under § 723.022(5), *Fla. Stat.*

191. The Defendants have unreasonably disturbed the park residents or constitute a breach of the peace as evidenced by the unreasonable elimination or reduction of services and facilities, including, but not limited to, the extensive and repeated flooding of the lots and the Park common areas, which interferes with the ingress and egress of the Homeowners and their guests to the lots and the common areas.

### Defendants failed to comply with their statutory obligations of good faith and fair dealings

192. Section 723.021, *Fla. Stat.*, mandates that "[e]very rental agreement or duty within this chapter imposes an obligation of good faith and fair dealings in its performance …."

193. The Defendants' have not complied with their statutory obligations of good faith and fair dealings in violation of § 723.021, *Fla. Stat.*

194. The Defendants have breached their statutory and contractual duties and as a direct and proximate result have caused the Plaintiffs to suffer substantial and actual damages.

195. Pursuant to §§ 723.025 and 723.061(1)(c), *Fla. Stat.*, the Defendants must ensure the quiet and peaceful enjoyment of Plaintiffs' mobile home lots.

196. The Defendants have breached their duty to permit the Plaintiffs to peacefully and quietly enjoy the possession of their lot and the Park.

197.     The Defendants breached their statutory warranty of habitability and duty in that they deprived Plaintiffs of the safe, healthy, and comfortable use of the premises and disturbed the Plaintiffs' peaceful and quiet enjoyment of their lots and the Park.

198.     The Defendants have breached the lot rental agreement with the Plaintiffs, accompanying statutory warranty of habitability, and the express and implied covenant of peaceful and quiet enjoyment of their lots and the Park and as a direct and proximate result have caused the Plaintiffs to suffer substantial damages.

199.     Defendants have continually and repeatedly failed to comply with the requirements of the applicable building, housing, and health codes. Absent action by this Court, Plaintiffs will suffer further or future irreparable harm.

200.     Defendants have continually and repeatedly failed to maintain utility connections and systems for which the park owner is responsible in proper operating condition. Absent action by this Court, Plaintiffs will suffer further or future irreparable harm.

201.     Plaintiffs have no adequate remedy at law to stop the further or future noncompliance with the requirements of the applicable building, housing, and health codes.

202.     Plaintiffs have no adequate remedy at law to stop the further or future failure to maintain utility connections and systems for which the park owner is responsible in proper operating condition.

203.     Plaintiffs have a clear legal right to prohibitory and mandatory injunctive relief.

204.     Permanent injunctive relief will serve the public interest.

205.     Defendants never provided a written ninety (90) day notice to the

Plaintiffs that their services were going to be eliminated or reduced as required by § 723.037(1), *Fla. Stat.*

206.    Defendants failed to provide an advance 90 day written notice to the Plaintiffs of the reduction or elimination of services and/or failure to maintain the common areas, improvements or buildings within the common areas in violation of § 723.037, *Fla. Stat.*

207.    Defendants have failed to comply with the terms and conditions in their lot rental agreements by improperly and unlawfully failing to provide a corresponding decrease in lot rental amount consistent with the reduction or elimination of services.

208.    Defendants have therefore breached their agreements with the Plaintiffs and caused them to suffer substantial losses and damages.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.    Judgment be entered in favor of Plaintiffs and against Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, MHC Operating, Allen Bobo, and the Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.    Plaintiffs be awarded prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

c.    Plaintiffs be awarded a judgment declaring that the Defendants' conduct is prohibited by Chapter 723, *Fla. Stat.*;

d.    Plaintiffs be awarded a judgment declaring that the Defendants violated Chapter 723, *Fla. Stat.*

e.    Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ.*

*P.*;

f.      Plaintiffs be awarded reasonable costs and attorneys' fees pursuant to §723.068, *Fla. Stat.*;

g.      Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by, or for the benefit of, the Defendants;

h.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

i.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Eight – Exploitation of an Individual Over the Age of 65 -** Violation of §§ 812.014, 812.0145, *Fla. Stat.* - by all Defendants

209.    Plaintiffs reallege and7 restate paragraphs 1 through 71.

210.    The Defendants have violated §§ 812.014 and 812.0145, *Fla. Stat.*, which prohibit as unlawful theft from an individual or individuals over the age of 65.

211.    Plaintiffs are persons 65 years of age or older, who would otherwise not be defined as a "vulnerable adults" under §415.102(8), *Fla. Stat.*

212.    Defendants knowingly obtained or used, or endeavor to obtain or to use, the property of the Plaintiffs with intent to, either temporarily or permanently:

        (a)    deprive the Plaintiffs of a right to the property or a benefit from the property; or

        (b)    appropriate the property to Defendants' own use or to the use of any person not entitled to the use of the property.

213.    The property has value as defined by §§ 812.012(4), (5), (6), and )(10), *Fla. Stat.*

214.    Defendants have caused Plaintiffs to suffer substantial losses and damages.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.      Judgment be entered in favor of Plaintiffs and against Defendants Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, Equity LifeStyle, MHC Operating, Allen Bobo, and the Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.      Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

c.      Plaintiffs be awarded prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

d.      Under § 812.035, *Fla. Stat.*, enjoin violations of the provisions of §§ 812.012-812.037 by issuing appropriate orders and judgments, including, but not limited to:

    1.      Ordering any defendant to divest himself or herself of any interest in any enterprise (as defined in §812.014(9), *Fla. Stat.*), including real estate;

    2.      Imposing reasonable restrictions upon the future activities or investments of any defendant, including, but not limited to, prohibiting any defendant from engaging in the same type of endeavor as the enterprise in which he or she was engaged in violation of the provisions of §§ 812.012-812.037, *Fla. Stat.*;

    3.      Ordering the dissolution or reorganization of any enterprise;

    4.      Ordering the suspension or revocation of any license, permit, or prior approval granted to any enterprise by any department or agency of the state;

5.      Ordering the forfeiture of the charter of a corporation organized under the laws of the state or the revocation of a certificate authorizing a foreign corporation to conduct business within the state, upon finding that the board of directors or a managerial agent acting on behalf of the corporation, in conducting the affairs of the corporation, has authorized or engaged in conduct in violation of §§ 812.012-812.037, *Fla. Stat.*, and that, for the prevention of future criminal activity, the public interest requires the charter of the corporation forfeited and the corporation dissolved or the certificate revoked.

e.      Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by, or for the benefit of, the Defendants;

f.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

g.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Count Nine - National Origin and Race Discrimination in Violation of the Fair Housing Act -** Violation of 42 U.S.C. §§ 3601 *et seq.* - by Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, MHC Maralago, Equity LifeStyle, and MHC Operating

215.      Plaintiffs reallege and restate paragraphs 1 through 18, 51-57.

216.      Defendants' policies and practices have a disproportionate adverse impact on Latinos and African Americans as compared to similarly situated whites. This disproportionate impact is the direct result of Defendants' tenant screening product that automatically and without an individualized assessment determines and reports to a housing provider that an applicant is disqualified for rental housing based on the existence of a criminal record. This policy is not necessary to achieve any

substantial, legitimate, nondiscriminatory interest. There are at least two alternatives that would have a less discriminatory effect: conducting an individualized assessment or solicit sufficient information to allow their background screening company to do so.

217.     Defendants' policies and practices have the intention to discriminate based on national origin and race. Defendants are aware of the overwhelming disparate impact of automatic disqualification of applicants with criminal records and of the less discriminatory alternatives, yet it continues to unjustifiably deny housing to Latinos and African Americans.

218.     Defendants also intentionally encourages, facilitates, and assists in the unlawful discrimination in violation of the Fair Housing Act by screening prospective homeowners with criminal records that prevents them from conducting an individualized assessment of relevant mitigating information, and by encouraging their background screening company not to conduct an individualized assessment.

219.     Defendant's policies and practices constitute unlawful discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604, by:

    a.     making mobile home housing unavailable on the basis of race and national origin in violation of 42 U.S.C. § 3604(a); and

    b.     providing different terms and conditions and discriminating in the provision of services in connection with mobile home housing on the basis of race and national origin in violation of 42 U.S.C. § 3604(b).

220.     Plaintiffs have been injured by Defendants' discriminatory conduct and suffered damages as a result.

221.     Defendants' conduct was intentional, willful, and made in reckless

disregard for the known rights of others.

**Relief Requested:**

Wherefore, Plaintiffs request that:

a.      Judgment be entered in favor of Plaintiffs and against Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, MHC Maralago, Equity LifeStyle, and MHC Operating jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.      Plaintiffs be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

c.      Plaintiffs be awarded prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

d.      Plaintiffs be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

e.      Plaintiffs be awarded a judgment eliminating or vacating any recorded lien recorded by, or for the benefit of, the Defendants;

f.      Plaintiffs be awarded a judgment piercing of any limited liability veil;

g.      Plaintiffs be awarded such other and further equitable and legal relief as the Court deems just and necessary.

**Demand For Jury Trial**

Plaintiffs demand a jury trial as to all issues triable by jury in this case.

Dated: November 27, 2019.

Respectfully Submitted,

/S/ Daniel W. Perry
DANIEL W. PERRY
"Trial Counsel"
Fla. Br No. 376671
4767 New Broad St, #1007
Orlando, FL 32814-6405
Ph: 407-894-9003
Email: dan@danielperry.com
Counsel for Plaintiffs