IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAURIE BAHRAKIS, et. al,

    Plaintiffs,

v.                                           Case No. 8:19-cv-2948-T-24SPF

ERIC ZIMMERMAN, et. al,

    Defendants.
_____/

**MOTION TO DISMISS COMPLAINT
AND MEMORANDUM IN SUPPORT THEREOF**
(Oral Argument Requested)

Defendants, Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, L.L.C., Equity Lifestyle Properties, Inc., and MHC Operating Limited Partnership (collectively, the "**Defendants**"), move for dismissal of the complaint (Doc. 1) filed by Plaintiffs as putative class representatives for the reasons set forth in the incorporated memorandum of facts and law.

**INTRODUCTION**

Plaintiffs left the "racketeering" out of RICO. They left the racketeering out of RICO because they left the "fraud" out of mail and wire fraud. Seventy-nine pages of allegations, no fraud. The claims are garden-variety grievances over the day-to-day operations of Harbor View mobile home park which are governed by the lot rental agreement between the park owner and the homeowners and the Florida Mobile Home Act (the "**FMHA**"), Chapter 723, *Florida Statutes*.

This case is a misuse of federal and Florida RICO statutes for the *in terrorem* effect. It is yet another in a string of almost mirror-image putative class action complaints filed by Plaintiffs'

1

counsel involving garden variety mobile home park landlord-tenant disputes governed by lot rental agreements and the FMHA.[1]  Plaintiffs are seven homeowners in Harbor View mobile home park, joined by the incorporated homeowners' association.  Defendants include the park owner, its parent company and affiliates, current and former employees, and their "outside" attorney and his law firm.  Plaintiffs in their various capacities lack standing to bring certain claims.  The shotgun RICO allegations fail the threshold pleading requirements of Rules 8 and 9(b).  They utterly fail the "plausibility" test.  And they fail to state a substantive RICO claim based on mail or wire fraud, which means they fail to state a RICO conspiracy claim as well.

## THE FLORIDA MOBILE HOME ACT

Operation of Harbor View Park is subject to the FMHA, a preemptive regulatory statute governing the operation of mobile home parks in Florida.  §§ 723.002 and §§ 723.004, *Fla. Stat.*  As the governing administrative agency, the Florida Department of Professional and Business Regulation (the "**DPBR**") "has the power and duty to enforce and ensure compliance" with the provisions of the FMHA.  § 723.005, *Fla. Stat.*  The FMHA requires a park owner to disclose to each prospective homeowner the material terms and conditions of the tenancy before entering into a "lot rental agreement." That disclosure is in the form of a "prospectus."  § 723.011, *Fla. Stat*.  The DPBR reviews each prospectus and advises the park owner whether it complies with the FMHA.  § 723.011, *Fla. Stat.*  An "approved" prospectus must describe the facilities and services

---

[1] *See Schalamar Creek Mobile Homeowner's Assoc., Inc., et. al v. Adler, et. al*, U.S. District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-00291-JSM-AEP; *Royal Palm Village Residents, Inc., et. al v. Slider, et. al,* U.S. District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-874-T-36SPF; *Whispering Pines Mobile Homeowners Ass'n, Inc., of Kissimmee, et. al v. Wallach, et. al*, U.S. District Court for the Middle District of Florida, Orlando Division, Case No. 6:19-cv-00487-CEM-TBS; *Drummond, et. al v. Zimmerman, et. al*, U.S. District Court for the Southern District of Florida, West Palm Beach Division, Case No. 8:19-cv-02948-SCB-SPF.

2

to be provided by the park owner, the way utilities and other services will be provided, a list of all fees and charges, and a copy of the rules or regulations and lot rental agreement. *Id*. Under the regulatory scheme, homeowners may not challenge the approval of a prospectus, but they can challenge its implementation if they contend it contravenes a provision of the FMHA. *Village Park Mobile Home Ass'n, Inc. v. State, Dept. of Business Regulation, Div. of Fla. Land Sales, Condominiums & Mobile Homes*, 506 So.2d 426 (Fla. 1st DCA 1987).

The FMHA has comprehensive remedial provisions designed to protect tenants and homeowners aggrieved by a violation of the Act. Those include: (1) enforcement of rights or duties under certain sections of the Act by civil action after the party has exhausted its administrative remedies, (§ 723.004(4)); (2) powers and duties of the DPBR including investigatory powers and the duty to institute enforcement proceedings in its own name (§ 723.006); (3) regulations as to the mobile home lot rental agreement (§ 723.031); (4) provisions for unreasonable lot rental agreements (§ 723.033); and (5) mediation or arbitration provisions concerning lot rental increases, reduction in services or utilities, or changes in rules or regulations (§ 723.037-38). Notably, Plaintiffs bring a claim here (Count Seven) under the FMHA for breach of the statutory duties and their lot rental agreement.

## **MEMORANDUM OF FACTS AND LAW**

The Complaint should be dismissed for the following reasons.

**I.      The Complaint fails the standards of Rule 8 and Rule 9(b).**

The Complaint fails the pleading standard of Rule 8 of the Federal Rules of Civil Procedure. It is a shotgun pleading. It is replete with immaterial and otiose allegations (*e.g.*, a two-page, single-spaced, full quotation of the park owner's Business Ethics and Conduct Code). It is layered in hyperbole and pandering references to "elderly" individuals. The 79 pages of

allegations and claims (and alternative allegations and claims) is a knot neither Defendants nor the Court should have to untangle. Defendants are lumped together in the claims, each of their conduct undifferentiated from the others. The Complaint contravenes each Defendant's individual due process rights to fair notice of the claims against them and to assert his, her or its defenses.[2]

The Complaint likewise fails the pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. Because the § 1962(c) claim is based on an alleged pattern of racketeering consisting of acts of mail and wire fraud, its substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* (see below) but also with the heightened pleading standard of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also, Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)). A plaintiff "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id*. at 1316-17. Pleadings offering only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. *Schalamar Creek Mobile Homeowner's Assoc., Inc., et. al v. Adler, et. al,* U. S. District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-00291 (Doc. 36 at p. 8)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). And that describes the implausible

---

[2]Each RICO claim impermissibly conflates both the federal and Florida RICO statutes in contravention of Rule 10(b) of the Federal Rules of Civil Procedure. *See Bialek v. Delvista Towers Condo. Ass'n, Inc.*, 994 F.Supp.2d 1277, 1281 (S.D. Fla. 2014)(citing Rule 10(b)).

4

RICO claims here – formulaic, conclusory, and rote incantations of the bare elements of the statutes.

Further, "when the alleged fraud involves multiple defendants, Rule 9(b) requires that the plaintiff plead sufficient facts to inform each defendant of the nature of its alleged participation in the fraud." *Transatlantic, LLC v. Humana, Inc.*, 666 Fed. Appx. 788, 789 (11th Cir. 2016)(internal citation omitted).  Instead of lumping defendants together, a "plaintiff must allege facts with respect to each defendant's participation in the fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).  Here, the RICO claims fail to meet the required level of specificity.  Defendants include the owner of Harbor View, its parent company and other affiliates, current and former employees, and the park owner's outside lawyer (Allen Bobo) and law firm (Lutz, Bobo & Telfair, P.A.).  Yet, they are lumped together in the RICO claims.  The claims fail to provide adequate notice of the serious charges levied against each Defendant.  For that matter, it not entirely clear *by whom* the RICO claims are brought, *i.e.*, the individual Plaintiffs, Harbor View Mobile Homeowners Association, Inc. (the "**Association**"), or all of them.  That makes it unreasonably difficult to address the threshold of Article III standing, which is lacking as pled.

II.     **The RICO Counts Fail the "Plausibility" Test and Must be Dismissed.**

RICO outlaws criminal racketeering, not disputes over mobile home lot rental agreements or the day-to-day operation of a mobile home park.  No racketeering is present here because no fraud is in the Complaint.  RICO claims predicated on mail and wire fraud *must* include actionable fraud, which requires a material misrepresentation and reliance.  Absent those two elements, no fraud can occur.  Without fraud, no mail or wire fraud can occur.  And, in turn, without mail or wire fraud, no racketeering is present.  And when no racketeering is present, no RICO claim is stated.

5

The substantive RICO claims (Counts One and Two) are for violation of 18 U.S.C. § 1962(c) and are based solely on mail and wire fraud.[3] (Compl. at ¶¶ 89 - 99). Mail or wire fraud requires a "scheme to defraud."[4] A scheme to defraud must involve a material misrepresentation and reliance thereon. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257-58 (11th Cir. 2004). Here, no misrepresentation or reliance is alleged. Consequently, the RICO claims cannot survive a motion to dismiss.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcraft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). To determine plausibility, courts follow a two-pronged approach. *Iqbal*, 556 U.S. at 679. First, although a court must accept as true all the allegations contained in a complaint, the tenet is that a court must ignore legal conclusions. *Iqbal*, 556 U.S. at 678; *see also, Peavey v. Black*, 2011 WL 2457901 at *1 (M.D. Fla. June 20, 2011). Second, a court determines whether the well-pleaded factual allegations – assumed to be true – "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Notwithstanding its prolixity, the complaint does not pass the "plausibility" test with respect to any of the RICO counts. When on the basis of a dispositive issue of law no construction of the allegations will support the cause of action, dismissal of the complaint is appropriate. *Tilton v. Playboy Entertainment Group, Inc,* 2007 WL 80858, at *1 (M.D. Fla. Jan. 8, 2007).

---

[3]Violation of § 1962(c) requires "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

[4]"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses mails or wires in furtherance of that scheme." *Am. Dental Ass'n*, 605 F.3d at 1290-91.

Even taken as true, the allegations fail to state a violation of §1962(c) because no "racketeering activity" is present. Racketeering activity – referred to as predicate acts – is defined as any one of several federal or state offenses. 18 U.S.C § 1961(1). Plaintiffs premise their RICO claims solely on alleged predicate acts of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343. (Compl. at ¶¶ 71 - 81). RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it. *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001)(quoting *Al–Abood ex rel. Al–Abood v. El–Shamari,* 217 F.3d 225, 238 (4th Cir. 2000)). That describes Plaintiffs' RICO strategy here.

Plaintiffs fail to plead and cannot prove mail or wire fraud because no "scheme or artifice to defraud" exists here. Wade through the surplusage and hyperbole, ignore the overly dramatic condemnations, and not a single misrepresentation is alleged in the Complaint. It is a 79-page swing and a miss. The RICO claims are truly not tethered to any specified misrepresentation. At most, they are loosely tied to an "overall fraudulent scheme" woven (out of whole cloth) by Plaintiffs. But an overall fraudulent scheme cannot establish mail and wire fraud (see below).[5]

The stated acts of mail and wire fraud at Harbor View are, in reality, a litany of perceived garden-variety violations of various provisions of the FMHA, including: the former owner's sale of the park in 2002 supposedly in violation of the Association's statutory "right of first refusal" under the FMHA (§ 723.071); "fraudulently compelling" the Association in 2015 to enter into a now-expired "long-term" rental agreement allegedly containing provisions that contravene a

---

[5]Plaintiffs fail to allege another necessary element of mail and wire fraud – namely, what Defendants gained by the alleged fraud. *See*, *Ambrosia*, 482 F.3d at 1316-17.

number of provisions of the FMHA (and proposing in 2018 that the parties again enter into a similar agreement); rejecting rent "comparables" (§§ 723.037; 723.033(5));[6] imposing "illegal" fees and charges in violation of numerous provisions of the FMHA; imposing "illegal" pre-conditions to the purchase or sale a house in violation of numerous provisions of the FMHA; abusing the "approval" process to divert sales from third-party realtors, calling out "hypertechnical" rule violations, and "concealing" the identities of homeowners in the Park from the Association (how is that possible?); and failing to maintain stormwater drainage and electrical connections (§ 723.022(4)).  (Compl. at ¶ 71).  Added to the purported violations of the FMHA are grievances that certain park facilities do not comply with the Americans with Disabilities Act, the park owner prohibits prospective homeowners with felony convictions in violation of the Fair Housing Act, and the park owner breached a 2005 settlement agreement with the Association.  *Id*.

Some of that is non-representational activity (*e.g.*, failing to maintain drainage or electrical connections; *etc*.).  Some is a *refusal* to make a representation (*e.g.*, refusing to disclose homeowner identification information to the Association).  To the extent any of the conduct can be construed as an affirmative representation, the associated grievances arise because the park owner made the alleged "representation" in the first place and continues to stand by it, *not because it is somehow false* (*e.g.*, rejecting rent comparables; imposing pre-conditions on the purchase or sale of homes; prohibiting residents with felony convictions; calling out hyper-technical rule violations; *etc*.). So too, much of the conduct cannot involve actionable fraud because it involves "future" conduct (*e.g.*, maintaining drainage and electrical connections; *etc*.), or turn on matters of

---

[6]Notably, § 723.037(4)(e) specifies the negotiation process involving the exchange of rent comparables "is not intended to be enforced by civil or administrative action.  Rather, the meetings and discussions are intended to be in the nature of settlement discussions in the nature of settlement discussions . . . ."

law that cannot be the basis of fraud (*e.g.*, whether certain fees or charges comply with the FMHA; whether the facilities are not compliant with the ADA; whether the prohibition on residents with felony convictions violates the FHA, *etc.*).

The only <u>implied</u> *mis*representation involves the disputed fees and costs. The gist of that is certain fees and charges openly and obviously imposed by the park (*e.g.*, application fees, guest fees, pest control fees and "excess lawn watering fees," *etc.*), while "*authorized by the Prospectus,*" are "illegal" under the FMHA, the Florida Constitution, and the United States Constitution (no explanation provided).[7] (Compl. at ¶ 51)(emphasis added). That is, at best, a claim for breach of the lot rental agreement.[8] The fees and charges have never been concealed. Why would they be? They are, as alleged, expressly *authorized* by the prospectus approved by the DPBR. The open and obvious imposition of the fees and charges does not involve any misrepresentation and cannot, therefore, constitute mail or wire fraud. Federal courts in this and other Florida districts have recognized such. *See*, *In re Checking Account Overdraft Litigation*, 797 F.Supp.2d 1323, 1331 (S.D. Fla. 2011); *Signeo Int'l. Ltd. v. Wade*, 2013 WL 12153590, * 7 (M.D. Fla. April 1, 2013). The foundation for those decisions derives from *Braswell Wood Co., Inc. v. Waste Away, Inc.*, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010), *reconsid. denied*, 2011 WL 255627 (M.D. Ala. Jan. 26, 2011).

---

[7]The Complaint provides no insight how billing *in accordance with* the terms of a Prospectus submitted by a park owner and pre-approved by the DPBR can plausibly be part of a scheme to defraud by misrepresentation. Because it can't. As for "unconstitutional" fees and charges, Defendants are at a complete loss. These words are meaningless incantations – not plausible, specific allegations.

[8]Every putative member of the proposed class has an "identical, or substantially similar mobile home lot rental agreement[] with identical or similar restrictions or sub-parts . . . ." (Compl. at ¶ 22).

9

The court in *Braswell* dismissed (without leave to amend) a RICO "mail and wire fraud" claim alleging a scheme to double-bill for contractual surcharges and collect other improper fees and charges. *Braswell*, 2010 WL 3168125, at *3. The plaintiff argued there (as Plaintiffs will here) that it established the existence of an "overall fraudulent scheme," but the court rejected that theory because it "overstates the flexibility of the mail and wire fraud statutes." *Id*. A "scheme to defraud" for purposes of the mail and wire fraud statutes requires allegations of misrepresentation and reliance. *Id.* (*citing Klay*, 382 F.3d at 1257-58). The invoices used to collect the allegedly improper fees and charges were sent through the mail, but the court pointed out they contained no misrepresentations to establish mail or wire fraud. The invoices reflected the defendant was levying the fees and charges, which "was entirely true." *Id*. at *4. The court noted that certain fees and charges were appropriate under the parties' contract. "[B]ut every incipient billing dispute is not a 'misrepresentation' . . . even if the customer ultimately prevails on the merits of the dispute." *Id*. The court posited that if the customer had demanded an explanation and the defendant responded with a false assertion, "that would be closer to a cognizable misrepresentation." *Id*. "But to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning." *Id*.

In the *Overdraft* case, the Honorable James L. King dismissed (with prejudice) a RICO claim predicated on mail and wire fraud alleging the defendant bank and its consultant conspired to devise an unlawful procedure to increase overdraft fees charged to the bank's customers. *Overdraft*, 797 F.Supp.2d at 1329. The court noted that, where a plaintiff predicates a RICO claim on mail or wire fraud, the plaintiff must prove that: (1) defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) they did so willingly and with an intent to

10

defraud, and (3) they used the U.S. mail or interstate wires for the purpose of executing the scheme. *Id*. at 1328.   Analyzing the scheme "sketched" by the plaintiffs, the court determined that, "at best," it alleged the mail and wire fraud occurred when the billing statements were mailed to the customers.[9]  *Id*. at 1330.   "Such cannot be the basis for a RICO claim."  *Id*.

The court considered *Braswell* "particularly persuasive" in the context of whether the mailed invoices containing allegedly improper charges constituted misrepresentations for purposes of RICO.  *Id*. at 1331.   The court noted that the Honorable W. Keith Watkins in *Braswell*, even when considering the charges in that case may not have been in accord with the parties' underlying contract, held the invoices did not constitute "misrepresentations" because the charges "were possibly via the terms of the contract."  *Id.* (quoting *Braswell*, 2010 WL 3168125, at *4). "Ultimately, Judge Watkins stated that 'to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning.'"  *Id*. (quoting *Braswell*, 2010 WL 3168125, at *4).  The court further noted that Judge Watkins found amendment would be futile given the nature of the allegations and dismissed the RICO claim in *Braswell* with prejudice.  *Id*.

Finding that its holding should not differ from that of *Braswell*, the court in *Overdraft* likewise found the wrongful overcharges alleged there, "at least under these facts and permitted by contract, are not synonymous with 'misrepresentation' in the context of the RICO statute."  *Id*. at 1332.  "Plaintiffs' RICO claims are the proverbial square peg in the round hole, and Plaintiffs should not be permitted to alchemize their claims for breach of contract into ones for civil conspiracy."  *Id*.  The court dismissed the RICO claim, with prejudice.  *Id*.

---

[9]The court rejected the plaintiffs' contention they need not allege their RICO claims with specificity because they alleged "an overall scheme to defraud by Defendants replete with allegations of half-truths and omissions in furtherance of that scheme."  *Id*.  (citing *Braswell*).

11

Other courts too have adopted the rationale in *Braswell*. For example, in dismissing (and denying leave to amend) a class action RICO claim based on mail and wire fraud, the court in *Almanza v. United Airlines, Inc.*, 162 F.Supp.3d 1341, 1357 (S.D. Ga. 2016), quoted and relied on the rationale of *Braswell* in holding that the inclusion of an allegedly improper tax fee on airline tickets "amounted only to a representation that Defendants assessed this fee as part of the purchase price – a representation that was, in fact, true." The court further concluded the charge "does not constitute a false statement that Defendants were permitted to tax plaintiffs . . . or that these passengers were obligated to pay same under Mexican law." *Id*. (citing *Braswell*, 2010 WL 3168125, at *4; *Gifford v. Don Davis Auto, Inc.*, 274 S.W.3d 890, 894 (Tex. App. – Ft. Worth 2008)(inclusion of tax an itemized charge was not a misrepresentation)).

Here too, Plaintiffs' substantive RICO claims are square pegs. Plaintiffs concoct and rely on an "overall" scheme, nothing specific to defraud using the mails or wires. They fail to plead (specifically or otherwise) any actionable misrepresentation or reliance. They admit the disputed fees and charges are "<u>authorized by the Prospectus</u>" which contains the lot rental agreement. (Compl. at ¶ 62). Hoping to leverage the *in terrorem* effect of RICO claims, Plaintiffs are attempting to "alchemize" their claims for breach of the lot rental agreement or to challenge the implementation of it under the FMHA framework (*see* Count Seven) into a civil conspiracy. Counts One and Two fail to state claims for substantive RICO under § 1962(c) and, consequently, Counts Three and Four fail to state claims for RICO conspiracy under § 1962(d). Given that amendment would be futile given the nature of the allegations, all four RICO claims should be dismissed, with prejudice.

### III.     Defendants are entitled to dismissal under Florida RICO.

"A Florida RICO claim is examined in the same way as a federal RICO claim." *Catano v. Catano*, 2019 WL 3035752, *8 (S.D. Fla. July 11, 2019)(citing *Ferrell v. Durbin,* 311 Fed. Appx. 253, 256 (11th Cir. 2009));  *see also, Dragon Jade Int'l., Ltd. v. Ultroid, LLC*, 2019 WL 2602895, *4 (M.D. Fla. June 25, 2019)(same).  For the same reasons they are entitled to dismissal of the federal RICO claims, Defendants are likewise entitled to dismissal of the Florida RICO claims.

### IV.     Plaintiffs failed to established Article III standing to bring the claims.

The complaint must be dismissed because Plaintiffs failed to establish they *each* have Article III standing to bring the claims.  Every Plaintiff has joined in every claim in the Complaint, with the sole exception of Count Six brought only by the Association.  Every one of the Plaintiffs must satisfy the requirements of Article III standing.  This fundamental requirement is not limited or reduced here because this is a putative class action, and each of the Plaintiffs bears the burden of proving personal standing.  *See, e.g.*, Wooden v. Bd. of Regents of Univ. System of Ga., 247 F.3d 1262, n. 20 (11th Cir. 2001) (involving multiple plaintiffs:  "Similarly, the fact that this suit was brought as a class action does not alter [individual plaintiff's] obligation to show that he individually satisfies the constitutional requirements of standing.") (citing *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339, n. 6 (11th Cir. 2000)).  The possibility that another named class representative or even an unnamed class member may have standing to advance the claim does not establish standing for a named plaintiff who cannot otherwise satisfy the constitutional requirements.  *Wooden*, 247 F.3d at n. 20 (citing *Bowen*, 233 F.3d at n. 6); *see also*, *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987) ("[A] plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of

constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.'").[10]

It is discernible even without specific allegations that Plaintiffs lack Article III standing to bring all the claims. For example, to the extent Plaintiffs seek relief based on the allegedly "illegal" sale of the Park 18 years ago in 2002 (it is not clear they do), that claim cannot include any of the individual Plaintiffs because they lack standing to bring a claim based on supposed "frustration" of *the Association's* right of first refusal under Section 723.071(1) of the FMHA. *See Ell/Cap Diversified 75 Naples Estates v. Naples Estates Homeowners Association, Inc.* 975 So.2d 577, 579 (Fla. 2d DCA 2008)(J. Altenbernd)(a class of homeowners has no standing to sue for a violation of Section 723.071(1)).

The Association lacks Article III standing because the class claims are primarily for damages, and no standing exists under state law. *See e.g., Warth v. Seldin*, 422 U.S. 490, 515 (1975). More fundamentally, the seven individual Plaintiffs bring the claims on behalf of themselves and a class composed of all homeowners in the Park. At the same time, the Association purports to bring the *same* claims for the same homeowners in an "associational" capacity. The homeowners are actual participants; the Association lacks standing to invoke this Court's jurisdiction on their behalf in a representative capacity.

Moreover, at the heart of this complaint are the allegations that Defendants conspired to violate the terms of the lot rental agreements because, even though the DPBR approved the prospectus and lot rental agreement, the prospectus and lot rental agreement allegedly contravene certain provisions of the FMHA. The Association is a *non-mandatory* homeowners' association

---

[10] Even a class plaintiff with standing to advance one claim because of a direct injury may lack standing to advance other claims due to a lack of injury. *Wooden*, 247 F.3d at n. 20 (citing *Bowen*, 233 F.3d at n. 6).

that does not receive a prospectus, have a rental agreement, own a home, or pay any of the disputed fees or charges to the park owner. It has no privity with any Defendant. The Association has no claim of its own, much less a claim common to other putative class members.

Citing § 723.037(1), *Fla. Stat.*, the Association will argue it has the authority to initiate litigation on behalf of the homeowners regarding an increase in lot rental amount, reduction in services or utilities, or change in rules and regulations. The Florida statute purporting to grant a homeowners' association standing to sue – § 723.079(1), *Fla. Stat.* – was found unconstitutional by the Florida Supreme Court in *Lanca Homeowners, Inc. v. Lantana Cascades of Palm Beach, Ltd.*, 541 So.2d 1121 (Fla. 1988). Florida law *conditionally* grants a mobile homeowners' association standing to sue, provided two conditions are met:

(i). the claim must be a matter of common interest to all homeowners (Rule 1.222, *Fla.R.Civ.P.*), and

(ii). a *majority* of the homeowners *agree in writing* to the filing of the action (§ 723.037(1), *Fla. Stat.*).

Here, the Association fails to allege it has obtained the written consent of a majority of homeowners to contest § 723.037(1), *Fla. Stat*. The Association lacks necessary Article III standing.

The Association also joins in bringing Count Eight (exploitation of an individual over age 65 in violation of Florida law) and Count Nine (violation of the Fair Housing Act). For the reasons addressed above, the Association lacks standing to bring those claims. So too, no individual Plaintiff has standing to bring either of those claims because none of them alleges they are over the age of 65 and were "exploited" in violation of Florida's statute (Count Eight), or that they suffered any adverse impact as a result of a violation of the Fair Housing Act (Count Nine).

V.   **The sale and transfer of the Park decades ago are not actionable.**

The allegations concerning a supposedly "illegal" sale of the Park 18 years ago have no place in this case.[11] The statute of limitations for any violation of the FMHA in connection with the transaction would have expired over a decade ago, and it is too temporally attenuated to be plausibly related to the scheme allegedly devised decades later. With respect to the sale, Plaintiffs vaguely suggest *the former owners* (identified as Mr. and Mrs. Holden – both nonparties to this action) violated the FMHA by not sending a notice required by the FMHA to the Association. (Compl. at ¶¶ 19 – 26). Plaintiffs complain the sale of the park was "concealed" and they only learned of it in November 2019.[12] *Id*. at ¶ 26. But, then, they turn around and complain the Holdens *recorded a warranty deed in 2002 evidencing the sale*. It is not possible as a matter of law to conceal the open and obvious sale or transfer of real property evidenced by an instrument duly recorded in the official public records of Pasco County (that is the purpose of the public records – to give notice). Not to mention, for 18 years the Association has been openly dealing only with the *new* owner. Plaintiffs have admitted the Association signed a settlement agreement with the new owner in 2005, for Pete's sake. *Id*. at 64.

The sale was open and obvious, as a matter of law. There was no misrepresentation. The Association (and each homeowner) has been dealing with and entering into contracts and rental agreements with the new park owner for 18 years. It is not possible that it can enter into settlement agreements and long-term rental agreements and participate in mediations with the new owner and

---

[11] Attorney Perry makes this same (baseless) accusations of "illegal" park sales in contravention of the statutory right of first refusal in each of the pending federal RICO actions he filed. It is a cut and paste pleading.

[12] Again, a nearly-identical claim is made in all of the pending federal RICO cases filed by Perry.

16

yet, somehow, detrimentally rely on the fact that Mr. and Mrs. Holden – who sold the park 18 years ago – still own it. The transfer cannot constitute actionable mail or wire fraud.

**VI.     Count Seven Fails to State a Claim Under the ADA.**

Count Seven purports to state a claim based upon alleged violations of the ADA. It is brought solely by the Association. No disabled individuals are included as a plaintiff and standing "is a threshold jurisdictional requirement." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). The Association is not an advocacy group of disabled individuals. It asserts no facts indicating that it has suffered an injury sufficiently tangible to satisfy its standing burden, and it fails to allege at least one of its members who have standing to sue in his or her own right. *See*, *Access for the Disabled, Inc. v. First Resort, Inc.*, 2012 WL 4479005, at *6 (M.D. Fla. Sept. 28, 2012). Further, without an individual plaintiff alleging a specific disability, it is not possible to determine which of the laundry list of alleged violations are related to the missing plaintiff's disabilities. *Access for the Disabled, Inc.*, 2012 WL 4479005 at *6.

The role of a mobile homeowners' association is defined in Section 723.075(1), Florida Statutes:

> Upon incorporation . . . the association shall become the representative of the mobile home owners in all matters relating to *this chapter*. (The Florida Mobile Home Act) (emphasis supplied)

The resolution of ADA claims is not the purpose of a mobile home owners' association as required by the second prong of the test established by *Hunt v. Washington State Apple Advertising Com'n.*, 432 U.S. 333, 343 (1977). The Association has no standing for its ADA claim. The Association also sues Defendants for prospective relief without any allegation that they control or possess the

right of control to correct the alleged barriers.  This relief requires that the named defendants have the authority to alter the park and direct the relief sought.

Lastly, Harbor View is a mobile home park comprised of single-family residences, not a place of public accommodation subject to the ADA.  While the Association pleads otherwise, the authorities do not support the Association's conclusion.  Residential facilities such as mobile home parks do not fall within the definition of public accommodation. 42 U.S.C. §12181(7); *Elliott v. Sherwood Manor Mobile Home Park,* 947 F.Supp. 1574, 1577 (M.D. Fla. 1996)(finding mobile home park did not fall within any of the categories covered by the ADA). *See, e.g., Gragg v. Park Ridge Mobile Home Court, LLP*, 2011 WL 4459701, at *4 (C.D. Ill. Sept. 26, 2011) (finding the mobile home lot rental at issue is more akin to a residential facility than any of the specific entities described in § 12181(7)); *Walnut Grove L.L.C. v. Stecher*, 111 Wash.App. 1037 (Wash. Ct. App. May 13, 2002)(finding as a matter of law that residential facilities such as a mobile home park are not places of public accommodation under the ADA).  Although a place of public accommodation may exist within a facility or property that is not otherwise open to the public, the Association has not pled with specificity as to the existence of such areas within Maralago.  It follows that the Association has not stated a claim under Title III of the ADA.

**VII.   Defendants adopt the grounds for dismissal set forth by Co-Defendants.**

Defendants hereby adopt and incorporate by reference those grounds for dismissal set forth in any motion to dismiss the Complaint subsequently filed by co-Defendants, J. Allen Bobo and Lutz, Bobo & Telfair, P.A.

## CONCLUSION

For the reasons stated herein, the Complaint should be dismissed, *with prejudice*, with the Court reserving jurisdiction to award Defendants their reasonable attorney fees incurred in bringing this motion and granting such other and further relief as may be just and proper.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request the Court permit oral argument on the issues addressed in this motion.

<div style="margin-left:50%">

*/s/ Ali V. Mirghahari*
J. Allen Bobo
Florida Bar No.  0356980
jabobo@lutzbobo.com
Jody B. Gabel
Florida Bar No.  0008524
jbgabel@lutzbobo.com
LUTZ, BOBO & TELFAIR, P.A.
2 North Tamiami Trail, Suite 500
Sarasota, FL  34236-5575
Telephone:     941-951-1800
Facsimile:     941-366-1603
Counsel for Defendants

and

Mahlon Barlow
Florida Bar No. 871117
mbarlow@sbwlegal.com
mhbassistant@sbwlegal.com
Ali V. Mirghahari
Florida Bar No. 1003493
amirghahari@sbwlegal.com
avmassistant@sbwlegal.com
SIVYER BARLOW & WATSON, P.A.
SunTrust Financial Centre
401 E. Jackson Street, Suite 2225
Tampa, FL 33602
Main: (813) 221-4242
Fax:  (813) 227-8598
Co-Counsel for Defendants

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 17, 2020, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, and a copy was sent via e-mail to:

Daniel W. Perry, Esq.
4767 New Broad Street, Ste. 1007
Orlando, FL 32814-6405
dan@danielperry.com
*Counsel for Plaintiffs*

                                                      */s/ Ali V. Mirghahari*