IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAURIE BAHRAKIS, et al.,

    Plaintiffs

vs.                                                        Case No. 8:19-cv-2948-T-24SPF

ERIC ZIMMERMAN, et al.,

    Defendants.
    _____/

**MOTION TO DISMISS COMPLAINT AND MEMORANDUM
IN SUPPORT THEREOF ON BEHALF OF DEFENDANTS,
LUTZ, BOBO & TELFAIR, P.A. AND JOSEPH ALLEN BOBO**

    Defendants, Lutz, Bobo & Telfair, P.A. and Joseph Allen Bobo, move for dismissal of the Complaint (Doc. 1) filed by Plaintiffs as putative class representatives for the reasons set forth in the incorporated memorandum of facts and law.

**INTRODUCTION**

    This is the sixth action filed by attorney Daniel W. Perry ("**Perry**") using his same template. Like the others, it was filed by individual homeowners and a mobile homeowners' association against a mobile home park owner, it's holding company, and various past and present employees of each. Also joined as Defendants were the park owner's outside law firm, Lutz, Bobo & Telfair, P.A. ("**LB&T**") and one of its attorneys who drafted a settlement agreement and attended mediation, Joseph Allen Bobo ("**Bobo**") (Lutz Bobo & Telfair, P.A. and Joseph Allen Bobo shall collectively be referred to as the "**Lawyers**").

    To address particular allegations involving them, the Lawyers file this motion in conjunction with the motion to dismiss the Complaint filed by the remaining Defendants. In the interest of brevity, *the Lawyers have not restated herein the grounds for dismissal already stated*

1

*in that motion. Rather, the Lawyers hereby adopt and join in the Motion to Dismiss Complaint and Memorandum in Support Thereof filed by the remaining Defendants (Doc. 8) in its entirety.*

## MEMORANDUM OF FACTS AND LAW

The Complaint against the Lawyers should be dismissed for the following reasons, *in addition to* the reasons stated by the remaining Defendants (Doc. 8).

I.  **The Defective RICO Claims Against The Lawyers.**

   A.  **The Lawyers did not control an "enterprise" by providing legal services to clients.**

To be liable under RICO, the Lawyers must have participated in the "operation or management" of the enterprise, and the Individual Plaintiffs' conclusory allegations do not plead actual facts to show that. *Kurlander v. Kaplan*, 2019 WL 3944338, *9 (M.D. Fla. Aug. 21, 2019)(citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). The enterprise cannot be the law firm itself because parties to a RICO enterprise must be separate and distinct from each other. *See Kurlander*, 2019 WL 3944338, *9 (attorneys acting in their capacities as lawyers in the firm cannot be an "enterprise" because lawyers practicing within a firm are only one party and, therefore, are merely conducting their own affairs). The Individual Plaintiffs must allege specific facts to show the existence of two different entities: a "person" and an "enterprise" that is not simply the same "person" referred to by a different name. *Id*. That is required because RICO liability "depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Id*. (internal citation omitted; emphasis in original).

The activities of "outside" attorneys working as agents for their clients does not create the necessary separation and distinctness. *Id.; see also, Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F.Supp.2d 1356, 1378-79, 1381 (S.D. Fla. 2010)(law firm providing legal services as an agent of the clients is not a separate and independent entity: "Whether the services the firm provided

were proper or fell below the standard of care recognized for lawyers in Florida, they were provided for an employer, and RICO liability will not attach."); *Acosta v. Campbell*, 2006 WL 146208, *6 (M.D. Fla. 2006)(law office and clients engaged in debt collection activities were not separate and distinct entities for purposes of RICO liability); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F.Supp.2d 1239, 1261 (S.D. Fla. 2004)(distinctiveness requirement not met where alleged enterprise consisted of corporation, employees, outside counsel, and agents and consultants). Here, every alleged enterprise consists of either: (1) a client of LB&T (the "<u>Harbor View MHC Enterprise</u>"), (2) one or more of the Lawyers acting in conjunction with one of their clients and officers, employees, agents or consultants of the client (the "<u>Zimmerman-Martin-Scott-Morris-Bobo Enterprise</u>" and the "<u>Harbor View Mobile Home Park Enterprise</u>"); or (3) merely the Lawyers themselves acting on their own behalf (the "<u>Bobo Enterprise</u>" and the "<u>Lutz Bobo Law Firm Enterprise</u>"). The Lawyers are not separate or distinct from any of those enterprises because the enterprises are made up of clients and their officers, employees and agents, or just the Lawyers themselves minding their own affairs.

Plaintiffs make the conclusory allegation that the Lawyers "compelled" the execution of an "illegal" long term agreement. (Compl. at ¶ 27). That does not eliminate the requirement of a separate and distinct enterprise where attorneys are involved. The plaintiffs in *Kelly* made a similar argument, complaining the defendant law firm went beyond the mere provision of legal services and actively participated in directing the RICO enterprise. According to them, the lawyers created and operated a fraudulent civil theft collection scheme. *Kelly*, 681 F.Supp.2d at 1379-80. The court rejected that proposition, noting that "even if the firm's legal services took a backseat to its collection services on behalf of the client, that still does not make the firm any less of an 'agent' for purposes of defining the members of the enterprise." *Id*. at 1380. The firm's tactics, "even if

3

deceptive or extortionate, were not separate and apart from its client seeking to obtain a civil recovery from the Plaintiffs.  They were and are, for RICO purposes, the same actors." *Id*.

Even could the Individual Plaintiffs prove the existence of a distinct "enterprise," they still have not pled any *facts* and cannot prove the Lawyers "operated or managed" it.  "[A]n attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." *Design Pallets, Inc. v. Gray Robinson, P.A.*, 2008 WL 3200275, *5 (M.D. Fla. 2008)(quoting *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997)); *see also*, *Kurlander*, 2019 WL 3944338 at *9 (providing legal services does not rise to operation or management of the enterprise itself).  "There is a long and robust line of cases that reject RICO claims against lawyers who were lawyering.  The Plaintiffs would do well to consider this carefully before thinking about repleading RICO on these facts.  Real criminal acts do not appear present here." *Kurlander*, 2019 WL 3944338 at *10.  Here, the Lawyers are lawyers who were lawyering.  They prepared the 2008 LTA years before the alleged RICO scheme and attended a mediation in 2017, both in the standard course of providing legal services to their client, the owner of the Park.[1]

Plaintiffs' conclusionary allegations devoid of facts do not carry the day.  The *Design Pallets* case illustrates this.  In *Design Pallets*, the plaintiffs sued the Gray Robinson firm under RICO alleging lawyers with the firm, on behalf of the corrupt enterprise, drafted strategy memos, board meeting agendas, letters to shareholders, business plans, sales and license agreements and

---

[1]It is not relevant whether the Lawyers "represented" the law incorrectly in the 2015 LTA (they did not).  Bad advice, poor drafting, and even professional negligence cannot satisfy the *Reves* "operation and management" test.  *See, e.g, Design Pallets, id*. at *5.  "RICO is not a surrogate for professional malpractice actions." *Handeen*, 112 F.3d 1339, 1348-49 ("Whether [the attorney] rendered the services well or poorly, properly or improperly, is irrelevant to the *Reves* test.") (internal quotation omitted).  Even conduct in the course of rendering legal services that falls below professional standards expected of a lawyer, violates the duty of candor, <u>or consists of false statements</u>, does not rise to the level of a RICO violation.  *See, Design Pallets, id*. at *5.

various other emails and letters in a scheme with its clients to unlawfully "squeeze out" the plaintiffs from a closely-held entity. *Design Pallets,* 2008 WL 3200275 at *5. Granting summary judgment in favor of the law firm, the court noted such evidence established nothing more than Gray Robinson acted as legal counsel. *Id*. Itself apparently concerned with the professional behavior of the lawyers, the court nonetheless held that even if their conduct fell below the professional standards expected of a lawyer in that community, there was nothing in the record to show that their representation amounted to a RICO violation. "The Court asked Plaintiff's counsel multiple times to provide an example of even one illegal action taken by Gray, and Plaintiffs failed to do so. Instead, Plaintiffs simply pointed to examples of Gray's failure to communicate honestly with [the plaintiffs] . . . Assuming that Gray had a duty of candor, and assuming the statements were actually false, this activity still does not rise to the level of a RICO violation." *Id*. *See also, Gilmore v. Berg*, 820 F.Supp. 179, 182-83 (D. N.J. 1993)(tax opinion and forecast letter drafted by attorney and accountant, which allegedly contained false statements and which were attached to private placement memorandum used to solicit investment in limited partnership, did not constitute participation in RICO enterprise because such conduct was merely rendition of professional services).

Bobo and the law firm of LB&T "lawyered," plain and simple. The legal work in creating the 2015 LTA constituted standard legal services, predating and untethered to the alleged schemes implemented years later. There is no separate and distinct enterprise, and the provision of services cannot constitute operating or participating in the operation of an enterprise.

### B.   There is no "pattern" of "racketeering activity."

The elements common to the RICO claims in this case require commission of or conspiracy to commit a "<u>pattern</u>" of "<u>racketeering activity</u>" involving a separate enterprise. Plaintiffs have

5

not pled and cannot prove the Lawyers engaged in a "pattern" of "racketeering activity. Predicate acts must constitute indictable, criminal activity. Here, the allegations are that the Lawyers created or offered a contract that violated the FMHA (it did not). But, even if that allegation was entirely true, there is no crime, and no predicate act. Misconduct that amounts to garden-variety state-law crimes, torts and contract breaches does not qualify as racketeering activity under federal RICO. Here, none of the alleged predicate acts constitute "indictable" conduct. Drafting the 2015 LTA or offering a similar contract during a mediation is simply *not criminal*.

The only "racketeering" tie-in is the alleged acts of mail or wire fraud described in paragraphs 71 through 81 of the Complaint. Notably, the participants in the mail and wire fraud described in paragraphs 71 through 81 are identified, and none of the Lawyers is one of them. (Compl. at ¶ 75) Plaintiffs have not pled and cannot prove the Lawyers engaged in an act of "racketeering" other than three barebones conclusions.

The "pattern" requirement is also unsatisfied here. RICO is intended to address repeat, rather than one-shot, criminal activity. Thus, "the heart of any RICO complaint is the allegation of a pattern of racketeering." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987). The statutory definition of a "pattern of racketeering activity" requires *at least* two different acts of racketeering activity. 18 U.S.C. § 1961(5). Plaintiffs rely on three acts by the Lawyers: preparation of the "2015 LTA," an "offer" made during mediation, and pursuing eviction lawsuits. (Compl. at ¶¶ 27, 39, 57)

   **C. There is no RICO claim because no fraud is alleged.**

The substantive RICO claims (Counts One and Two) are for violation of 18 U.S.C. § 1962(c) and are based solely on mail and wire fraud. (Compl. at ¶¶ 71 - 81). Mail or wire fraud

requires a "scheme to defraud." A scheme to defraud must involve a material misrepresentation and reliance thereon. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257-58 (11th Cir. 2004). Here, no misrepresentation or reliance is alleged. Consequently, the RICO claims cannot survive a motion to dismiss. See, *Braswell Wood Co., Inc. v. Waste Away, Inc.*, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010), reconsid. denied, 2011 WL 255627 (M.D. Ala. Jan. 26, 2011) and cases approving its rational discussed in Doc. 10, pp 5-12.

### D. Counts One/Two - there is no evidence the Lawyers violated § 1962(c).

In Count One, Plaintiffs allege Bobo violated § 1962(c) of RICO, which prohibits a person from conducting or participating in the conduct of the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). That same claim is brought against LB&T in Count Two. For the reasons addressed above, the Individual Plaintiffs have not pled and cannot prove these substantive RICO claims.

### E. Counts Three/Four - there is no evidence the Lawyers violated § 1962(d).

In Count Three, Plaintiffs allege Bobo violated § 1962(d) of RICO, which makes it illegal to conspire to violate RICO. 18 U.S.C. § 1962(d). In Count Four, Plaintiffs bring the same conspiracy claim against LB&T. Only boilerplate allegations of conspiracy are made, which need not be addressed because those are insufficient to withstand a motion to dismiss on their face. Plaintiffs do not even plead the necessary meeting of the minds between the alleged conspirators. *See Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010). Absent pleading (and proof) the Lawyers agreed to participate in the conspiracy, the RICO claims fail. *Id.* That requires proof that: (1) the Lawyers agreed on an overall objective; or (2) by showing the Lawyers agreed to personally commit two predicate acts. As for the latter, Plaintiffs only pled two predicate

7

acts by the Lawyers – preparation of the 2008 LTA and a mediation offer, neither of which is an indictable offense.

Lacking supporting allegations, Plaintiffs will again resort to the circular argument that even though they have no evidence demonstrating agreement by the Lawyers to participate in the conspiracy, they can rely on an inference from "parallel" conduct to prove the Lawyers agreed. Firstly, no conduct "parallel" to the RICO enterprise is alleged here. The drafting of the 2008 LTA occurred years *before* the alleged RICO enterprise, not parallel with it. Conduct predating the existence of the enterprise by years is not possibly indicative of any agreement to participate in the non-existent enterprise. Secondly, that approach does not suffice, and a doctrine exists to prevent its use. The element of "agreement" cannot be proven here by inference from "parallel" conduct because there is an "obvious alternative explanation" for the conduct of the Lawyers. *See Am. Dental*, 605 F.3d at 1294-95. In the conspiracy context "allegations that a defendant acted in ways consistent with a conspiratorial agreement, but also equally well explained by legitimate economic incentives, do 'not suffice . . . to show illegality.'" *RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S., LLP*, 682 F.3d 1043, 1051-52 (D.C. Cir. 2012)(quoting *Twombly*, 550 U.S. at 556-57)(affirming dismissal of RICO claim against law firm and two of its attorneys). "[C]onspiracy allegation 'd[oes] not plausibly suggest an illicit accord because it is not only compatible with, but indeed is more likely explained by, lawful, unchoreographed free market behavior.'" *Id.* at 1052 (internal quotation omitted). Plaintiffs "agreement by inference" argument fails because the Lawyers 9unparallet) conduct is explained "equally well" by legitimate economic incentives and "more likely" by legitimate, unchoreographed, free market behavior.

8

Finally, because Plaintiffs cannot state a substantive RICO claim against any Defendant, it follows as a matter of law they cannot state a RICO conspiracy claim against any of the Lawyers (or any other Defendant, for that matter).

## II. Count Five: Alleged Violation of Florida Deceptive and Unfair Trade Practices Act "by All Defendants".

Count Five alleges that all Defendants violated Sections 501.204 and 501.211, Florida Statutes. The Complaint fails to state a claim against the Lawyers upon which relief may be granted for two primary reasons. First, the provision of legal services does not fall within the purview of Chapter 501, Florida statutes because the practice of law is not considered "trade or commerce" within the purview of the FDUTPA. Second, FDUTPA does not apply to mobile home parks due to an express exception contained in Section 501.212, Florida Statutes. This exception was passed specifically to address similar claims filed by Plaintiff's current counsel, Perry.

### A. Chapter 501 does not apply to legal services

In *Kurlander v. Kaplan*, 2019 WL 3944338 (M.D. Fla., Tampa Div., Aug. 21, 2019), the Court squarely considered whether an attorney's practice of law fell within the purview of the FDUTPA. The Kaplan law firm had significant involvement in advising a real estate developer on the organizational structure for their company and investments. When problems developed, the client sued on numerous theories including FDUTPA. The Kaplan law firm defendants moved to dismiss under Rule 12 arguing that the provision of legal services did not fall within the ambit of Chapter 501. Granting the motion to dismiss, the Court held:

> FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1) (2019). The law is intended to protect the public from "unfair acts or practices" and unfair methods of competition, "in the conduct of any trade or commerce." *See id.* § 501.202(2). A practice is "unfair" under FDUTPA when it "offends established public policy" or is "immoral, unethical,

9

oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).

Attorneys are not per se exempt from FDUTPA. *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010) However, the practice of law normally does not satisfy the elements necessary to bring a claim under FDUTPA. *Id.* The key missing element is that FDUPTA only protects against unfair acts or practices in the "conduct of any trade or commerce." Fla. Stat. § 501.204(1). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id.* § 501.203(8). Despite this broad definition, conduct by a law firm or lawyers during the provision of legal services is not "trade or commerce" and is instead the exercise of a legal remedy. *CK Regalia, LLC v. Thornton*, 159 So. 3d 358, 360 n.2 (Fla. 3d DCA 2015); *State, Office of Atty. Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 357 (Fla. 4th DCA 2011); *see also Kelly*, 681 F. Supp. 2d at 1374–77 (noting that the practice of law is "conduct ostensibly occurring during the exercise of a legal remedy [and has] zero connection whatsoever to any 'trade or commerce' "). **Accordingly, the practice of law is not considered trade or commerce, meaning FDUTPA does not apply.** [Emphasis supplied]

*Id*. at *6.

### B. Mobile home parks are exempt from Chapter 501.

Second, the Plaintiffs allege that Defendants are not adequately maintaining the Community resulting in the withholding of services, failures to maintain, breaches of the peace, and similar. Chapter 501, Florida Statutes, was amended in 2004 to exclude these claims from the application of the Chapter 501. Ch. 2004-390, Section 13, amended the application of Chapter 501 to add the following exclusions to Section 501.212:

(7)(a) Causes of action pertaining to commercial real property located in this state if the parties to the action executed a written lease or contract that expressly provides for the process of resolution of any dispute and the award of damages, attorney's fees, and costs, if any; or

(b) Causes of action concerning failure to maintain real property if the Florida Statutes:

1. Require the owner to comply with applicable building, housing, and health codes;

10

      2. Require the owner to maintain buildings and improvements in common areas in a good state of repair and maintenance and maintain the common areas in a good state of appearance, safety, and cleanliness; and

      3. Provide a cause of action for failure to maintain the real property and provide legal or equitable remedies, including the award of attorney's fees.

      However, this subsection does not affect any action or remedy concerning residential tenancies covered under part II of Chapter 83, nor does it prohibit the enforcing authority from maintaining exclusive jurisdiction to bring any cause of action authorized under part II of Chapter 501.

Chapter 723 regulates the landlord tenant relationship between mobile home owners and mobile home park owners. Section 723.004, Florida Statutes. Chapter 723 requires a written contract between the parties in the form of a prospectus. Sections 723.011- 723.012, Florida Statutes. The Chapter also "expressly provides for the process of resolution of any dispute and the award of damages, attorney's fees and costs." Sections, 723.031, 723.037, 723.038, and 723.0385, Florida Statutes. Likewise, Chapter 723 provides a cause of action for failure to maintain the real property compromising the park and for an award of attorney's fees. Sections 723.021, 723.022, and 723.068, Florida Statutes. Thus, **the exclusions stated in Section 501.212(7), Florida Statutes, apply** and the Association's allegations *against all Defendants* under Chapter 501, Florida Statutes, fail to state a claim upon which relief can be granted.

### III.    Count Seven: Alleged Violation of the Florida Mobile Home Act and Breach of Statutory Duties and Lot Rental Agreement "by All Defendants".

Count Seven of the Complaint alleges a breach of statutory duties and the lot rental agreement on the part of all Defendants, *including the Lawyers*. Chapter 723, Florida Statutes regulates the landlord tenant relationship between mobile home park owners and the homeowner tenants. *See*, Section 723.004, Florida Statutes. The Lawyers are not regulated by the Act, are not parties to the rental agreement, and are not involved in the landlord tenant relationship. The allegations that Defendants have a duty to: comply with building, housing and health codes

11

(Compl. at ¶ 154); provide a stable lot (Compl. at ¶ 156); address flooding and drainage problems (Compl. at ¶ 162); maintain the stormwater management system (Compl. at ¶ 167); maintain utility systems (Compl. at ¶ 168); maintain common areas (Compl. at ¶ 172); provide access to common areas (Compl. at ¶ 180); comply with park rules (Compl. at ¶ 184); not breach the peace (Compl. at ¶ 188); and comply with section 723.021, Florida Statutes (Compl. at ¶ 192) do not apply to the Lawyers.[2] No allegations suggest that the Lawyers have any control or right of control in the management, operation, maintenance, renovation, or day-to-day control of the park. Interestingly, the Lawyers were joined in Count 7 addressing park maintenance issues but not in Count 6 when Plaintiffs' assert ADA violations relating to common element accessibility. These allegations fail to state a claim against the Lawyers.

## IV. Count Eight: Alleged Exploitation of an Individual Over the Age of 65 "by All Defendants".

Again, in Count Eight, Plaintiffs allege that all Defendants have exploited individuals over the age of 65. As indicated, the Lawyers are not park owners, managers, or operators, and they are not parties to the landlord tenant relationship.

The allegations against the Lawyers involve only three issues: the preparation of a settlement agreement *in 2015*, identified as a long-term agreement or "LTA" (Compl. at ¶¶ 27 - 38); attendance at a 2018 mediation on behalf of the park owner where an offer was alleged to have been made by the Lawyers (Compl. at ¶ 39); and pursuing eviction lawsuits "against Plaintiffs" (Compl. at ¶ 57).

---

[2] Remarkably, the same Lawyers are subject to the identical allegations made by Perry's template in another mobile home park case pending in the Palm Beach County Division of the Southern District. *See, Drummond v. Zimmerman*, Case No. 9:19-cv-81532-AHS, filed in the US District Court for the Southern District of Florida.

### A. The 2015 LTA

The 2015 LTA identified by Plaintiffs dated February 20, 2015, is attached to the Complaint. (Compl. at ¶ 27). As addressed below, no provision of the 2015 LTA is inconsistent with the FMHA, much less "illegal," or "criminal" thus forming a basis for a RICO claim. The 2015 LTA was simply a contract reached between the park owner and the mobile home homeowners' association (and its appointed negotiating committee appointed pursuant to Section 723.037(4), Florida Statutes) to establish the annual rent increases for upcoming years. As the contract shows, it provided specified rent increases for three annual lease terms, 2015 - 2018. No allegation suggests that the Lawyers were present for the negotiations (and they were not), or that they had any role other than the customary provision of legal services in drafting the contract.

### B. The offer at mediation

The second LTA was not a contract at all. Rather, it is characterized as an *offer* made by the Lawyers during a 2018 mediation proceeding. Offers made during a mediation are strictly privileged. The statutory mediation procedure enacted under the FMHA creates a privilege to protect and maintain confidentiality. Section 723.038(8), *Fla. Stat.,* provides that each party to a mediation proceeding has a privilege to refuse to disclose, and prevent any other person present at the proceeding from disclosing communications made during such proceeding. Plaintiffs' and attorney Perry's public disclosure of the confidential communications has wrongfully and incurably extinguished and deprived Defendants of the statutory privilege (see the authorities and argument presented in Doc. 4, Pages 6 and 7).

Because it was facilitated by a mediator certified by the Florida Supreme Court, the 2018 mediation was subject to Florida's Mediation and Confidentiality Act. See, Section 44.402(1)(c), Florida Statutes.

Section 44.405(1-2), *Fla. Stat.*, provides:

<u>Confidentiality; privilege; exceptions</u>

(1) Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel. A violation of this section may be remedied as provided by s. 44.406. If the mediation is court ordered, a violation of this section may also subject the mediation participant to sanctions by the court, including, but not limited to, costs, attorney's fees, and mediator's fees.

(2) A mediation party has a privilege to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications.

Section 44.405, *Fla. Stat.*, provides:

<u>Confidentiality; civil remedies</u>

(1)     Any mediation participant who knowingly and willfully discloses a mediation communication in violation of s. 44.405 shall, upon application by any party to a court of competent jurisdiction, be subject to remedies, including:

(a)     Equitable relief

(b)     Compensatory damages

(c)     Attorney's fees, mediator's fees, and costs incurred in the mediation proceeding.

By filing in the public court record their complaint describing a confidential mediation communication and attaching the draft settlement agreement as an Exhibit, Plaintiffs and Perry violated Florida's Mediation Confidentiality and Privilege Act and the FMHA. *The Lawyers adopt the argument and authorities advanced in the Petition For Mandatory Remedies For Plaintiffs' Violation Of The Mediation Act (Doc. 4).* Reference to offers made during a mediation that were "insisted" upon "to be part of any mediation settlement" are highly improper, prejudicial, and inadmissible in any court. The allegations failed to state a claim upon which relief can be granted.

C. **The baseless arguments addressing the 2015 LTA and the mediation offer**

Turning to the allegations that the expired 2015 LTA (and the mediation offer) somehow violate the Chapter 723, Florida Statutes, The Florida Mobile Home Act (the "Act), the allegations fail as a matter of law as shown below. Moreover, Section 723.038(6), Florida Statutes, confirms that mediation agreements reached during the extensive alternative dispute resolution procedures of the Act are *contracts subject to basic contract principles*:

> **723.038 Dispute settlement; mediation.**
> (6) … Any party, however may initiate an action in the circuit court to enforce a resolution of agreement arising from a mediation proceeding which has been reduced to writing. The court shall consider such resolution or agreement **to be a contract** for the purposes of providing a remedy to the complaining party.

[Emphasis supplied]

In paragraph 28, Plaintiffs allege that Section 2 of the LTA required "an illegal and oppressive $35 late fee." Late fees are not prohibited by the Act. To the contrary, late fees like any other fees, costs, entrance fees, or charges which the mobile homeowner may be required to pay must simply be disclosed in the park's prospectus. Section 723.012(9)(b), Florida Statutes. A mobile home park owner, the homeowners' association and it's negotiating committee may freely agree upon appropriate late fees for the failure to pay on time. Here they reached an agreement for a $35 late fee. There is nothing illegal or improper in the parties' agreement.

Paragraphs 29 - 31 contest Section 4 of the LTA which requires notice of a breach and an opportunity to cure the alleged violation. Notice/cure provisions are common in commercial contracts, are enforceable and are not prohibited by the Act. A park owner, homeowners association and it's negotiating committee may agree that the parties' written agreement is sufficient notice of the rent increases agreed rent increases and that each party will notify the other of a perceived breach and grant an opportunity to cure. Florida law upholds these provisions. *See,*

15

*Underwater Eng'g Servs., Inc. v. Util. Bd. of City of Key W.,* 194 So.3d 437, 445 (Fla. 3d DCA 2016)(holding that the trial court erred by entering judgment in favor of the plaintiff where the contractor was not provided with the contractually required **notice** and **opportunity** to **cure** the alleged defects in the project).

Paragraph 32 contests Section 6 of the LTA, a *contractual* attorneys fee provision. It alleges that the contractual fees provision violates Section 723.068, Florida Statutes. It does not. The parties may freely contract for the availability of attorneys' fees in excess of the statutory right. Under Florida law, contractual attorneys' fees provisions are enforceable to the extent of the covenant. "The right to attorney's fees under any contractual provision is limited by the terms of such provision.' "*Islander Beach Club Condo. v. Skylark Sports, LLC*, 975 So. 2d 1208, 1211 (Fla. 4th DCA 2008)(quoting *Bowman v. Kingsland Dev., Inc.*, 432 So. 2d 660, 664 (Fla. 5th DCA 1983)). Section 723.068, Florida Statutes, provides a limited *statutory* right to prevailing party attorneys' fees. The LTA expands the right to fees beyond the statutory basis. Nothing in the Act prohibits the parties from reaching such an agreement.

Paragraph 33 contests Section 7 of the LTA requiring that any controversy first be submitted to non-binding mediation and the waiver of the right to jury trial. Parties to a commercial contract may freely agree on alternative dispute resolution mechanisms prior to litigating any claim under the contract. A covenant for non-binding mediation is enforceable. *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95 (Fla. 3rd DCA 2017). Likewise, a party may freely waive the right to a jury trial. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). As a matter of law, the Act does not prevent such agreements.

Paragraph 34 alleges that Section 8 of the LTA "wrongfully excused the Defendants from delivering or redelivering a prospectus to the resale purchaser." A park owner is not required to

deliver a prospectus to a resale purchaser (the buyer of a used mobile home from an existing resident). *Tara Woods SPE, LLC v. Cashin*, 116 So. 3d 492, 500 (Fla. 2nd DCA 2013) holding that Chapter 723, Florida Statutes, "does not impose an affirmative duty to provide the resale home buyer with the seller's prospectus." Paragraph 45 also complains that *incentive agreements* are not permitted by Section 723.031(5), Florida Statutes. The quoted subsection does not address incentive arrangements at all. Rather, Section 723.041(1)(d), Florida Statutes, specifically allows a mobile home park owner or developer "buy down" rentals on an initial rental agreement. Again, nothing here is illegal and a violation of the Act.

Paragraph 35 complains about *release provisions* in the parties' commercial contract. Parties may freely provide releases in connection with their contract. No provision of the Act prohibits such covenants. Such provisions are entirely appropriate in this context. If a mobile home park owner agrees to limit rent increases to specified levels for multiple years, the park owner is expecting to receive the promised increases. Release provisions ensure that neither the association nor the homeowners it represents will file claims to offset or reduce the promised rent increases. Again, the Act does not address release provisions at all. Exculpatory clauses are disfavored under the law, but unambiguous exculpatory contracts are enforceable unless they contravene public policy. *Give Kids the World, Inc. v. Sanislo*, 98 So. 3d 759, 761 (Fla. 5th DCA 2012), citing *Applegate v. Cable Water Ski, L.C.*, 974 So.2d 1112, 1114 (Fla. 5th DCA 2008)(citing *Cain v. Banka,* 932 So.2d 575, 578 (Fla. 5th DCA 2006). Once again, nothing in the Act prevented the parties from reaching their agreement.

Paragraph 36 contests Section 10 of the LTA which indicates that the LTA will control over any conflict between it and the park's prospectus. Here, the park's prospectus allows for rent increases to be based on a myriad of factors, including prevailing market conditions and prevailing

17

market rental rates. By limiting the rent increases to the amounts specified in the LTA, the parties are overriding (superceding) the prospectus for the duration of the contractual LTA. This provision protects the homeowners by assuring them that the agreed-upon increases will override any rights of the park owner to market rate increases under the prospectus. Nothing in the Act prevents such an agreement of the parties.

Paragraph 37 contests the supposedly "boilerplate" merger and integration provision contained in Section 11. These are standard provisions ensuring that the final contract supersedes all previous negotiations and will not be modified unless in writing. These provisions are not prohibited or even addressed in the Act and they are enforceable under Florida law. *Coral Reef Drive Land Development, LLC v. Duke Realty Ltd. Partnership*, 45 So. 3d 897, 901-2 (Fla. 3rd DCA 2010).

Paragraph 38 contests Section 12 which obligates the parties to execute any further documents which carry out the intent of the contract. Again, these are standard provisions in commercial contracts which are not prohibited by the Act.

### D. The alleged eviction lawsuits against plaintiffs.

In the Complaint at paragraph 57, Plaintiffs allege that the Lawyers were hired "to pursue eviction lawsuits against Plaintiffs" for rule violations. No cases or case numbers were specified because there were none. If there were, the litigation privilege would bar Plaintiffs' claims. *Echevarria, et al. v. Cole*, 950 So. 2d 380 (Fla. 2007)

### E. Absence of standing.

The Association does not contest the 2015 LTA, only the individual Plaintiffs do. They lack standing for the following reasons: 1) No plaintiff alleges that they were involved in the negotiations for the 2015 LTA; 2) No plaintiff alleges that they were in the park during the term

of the 2015 LTA. 3) The Act does not allow an individual homeowner to contest an agreement reached by a mobile homeowners' association; and 4) The Act does not provide a right to opt out of a settlement agreement reached by a mobile homeowners' association.

Homeowners' associations in mobile home parks are voluntary in nature. Individual homeowners do not have to create one and they are not forced to become members if one is created. However, once a homeowners' association is created it becomes the representative of the individual homeowners for all purposes of the Act. Section 723.075(1), Florida Statutes, states in part:

> **723.075 Homeowners' associations.**—
> (1) … Upon incorporation and service of the notice described in s. **723.076**, **the association shall become the representative of all the mobile home owners in all matters relating to this chapter, regardless of whether the homeowner is a member of the association.** [Emphasis supplied]

The individual Plaintiffs lack standing to contest an LTA reached between the park owner and their homeowners association and its negotiating committee. All claims by the Plaintiffs addressing either the 2008 LTA or the offer advanced during the 2017 mediation fail for lack of standing.

As shown above, the allegations that the lawyers somehow abused or exploited the elderly homeowners fails to state a claim upon which relief can be granted. The Lawyers' actions, as alleged, were limited to the preparation of standard settlement documents and the attendance at a mediation, i.e. *lawyering*.

## CONCLUSION

For the reasons stated herein, the Complaint should be dismissed, *with prejudice*, with the Court reserving jurisdiction to award Defendants their reasonable attorneys' fees incurred in bringing this motion and granting such other and further relief as may be just and proper.

19

    /s/    *J. Allen Bobo*
J. Allen Bobo
Florida Bar No. 0356980
Jody B. Gabel
Florida Bar No.  0008524
LUTZ, BOBO & TELFAIR, P.A.
2 North Tamiami Trail, Suite 500
Sarasota, FL  34236-5575
Telephone:     941-951-1800
877-951-1800 (toll-free)
Facsimile:     941-366-1603
Email:  jabobo@lutzbobo.com
Email:  jbgabel@lutzbobo.com
*Counsel for Defendants*

Mahlon Barlow
Florida Bar No. 871117
mbarlow@sbwlegal.com
mhbassistant@sbwlegal.com
SIVYER BARLOW & WATSON, P.A.
SunTrust Financial Centre
401 E. Jackson Street, Suite 2225
Tampa, FL 33602
Main: (813) 221-4242
Fax:   (813) 227-8598
*Co-Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on February _____, 2020, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, and a copy was sent via e-mail to:

Daniel W. Perry, Esq.
4767 New Broad Street, Ste. 1007
Orlando, FL 32814-6405
dan@danielperry.com
*Counsel for Plaintiffs*

    /s/    *J. Allen Bobo*
J. Allen Bobo