UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAURIE BAHRAKIS, ET AL.,

        Plaintiffs,

v.                                        Case No.  8:19-cv-2948-T-24 SPF

ERIC ZIMMERMAN, ET AL.,

        Defendants.

_____/

## ORDER

      This cause comes before the Court on three motions: (1) the Park Defendants' Motion to Dismiss (Doc. No. 8), which Plaintiffs oppose (Doc. No. 15)[1]; (2) the Lawyer Defendants' Motion to Dismiss (Doc. No. 12), which Plaintiffs oppose (Doc. No. 18); and (3) Defendants' Motion to Compel Plaintiffs to Post Bond relating to their FDUTPA claim (Doc. No. 17), which Plaintiffs oppose (Doc. No. 23).  As explained below, the motions to dismiss are granted, which renders Defendants' motion to compel Plaintiffs to post a bond moot.

## I.  Standard of Review

      In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

---

[1] Defendants filed a motion to file a reply (Doc. No. 16).  However, the Court finds that a reply is not necessary and denies the motion.

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

(citation omitted).  While the Court must assume that all of the allegations in the complaint are

true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above

the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether

the plaintiff will ultimately prevail in his or her theories, but whether the allegations are

sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See

Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

This is one of several complaints filed by Plaintiffs' counsel against mobile home parks

in Florida.  It appears that the complaint and motion practice in this case is nearly identical to

that in a case filed in the Southern District of Florida—in fact, counsel for both sides have even

failed to delete all references to the parties in the Southern District of Florida case from their

filings in this case.  (Doc. No. 1: Count IX; Doc. No. 8, p. 18; Doc. No. 15, p. 14; Doc. No. 17, p.

2).

### A.  The Parties

This case is brought by seven individual mobile home owners (collectively referred to as

"Individual Plaintiffs") and their homeowners' association, Harbor View Mobile Homeowners

Association, Inc. ("the HOA").  Plaintiffs are attempting to bring this lawsuit as a class action

that consists of over 900 elderly current, former, and future mobile home owners in the Harbor

View Mobile Home Park ("the Park") from 2009 to the present.

The Individual Plaintiffs live in the Park, which is restricted to people age 55 and older.

The individual Plaintiffs provide no other descriptions about themselves, such as their ages,

when they each moved to the Park, and any physical limitations that they may have.  Plaintiffs assert claims against two groups of defendants regarding the operation of the Park.

The first group of defendants consists of Eric Zimmerman, Stanley Martin, Rene Scott, Sydney Morris, Harbor View MHC, L.L.C., Equity LifeStyle Properties, Inc., and MHC Operating Limited Partnership (collectively referred to as "the Park Defendants").  The Park Defendants are alleged to have operated the Park, which is owned by Harbor View MHC, L.L.C. It is unclear whether related entities—Equity LifeStyle Properties, Inc. and/or MHC Operating Limited Partnership—also own the Park or if they only operate the Park.[2]  Zimmerman, Martin, Morris, and Scott are present and/or past officers of Equity LifeStyle Properties, Inc.

The second group of defendants consists of Joseph Allen Bobo and his law firm, Lutz, Bobo and Telfair, P.A. (collectively referred to as "the Lawyer Defendants").  The Lawyer Defendants are alleged to have provided legal services related to the Park.

**B.  The Sales of the Park in 2002**

On March 21, 2002, the Park's prior owners (the Holdens) sold the Park to Diversified Investment Services, LLC, who sold the Park to Equity LifeStyle Properties, Inc. ("Equity LifeStyle") and MHC Operating Limited Partnership ("MHC Operating") in the Fall of 2002. Plaintiffs contend that the Holdens recorded the warranty deed evidencing their sale of the Park in Pasco County on July 11, 2002, and the warranty deed included a fraudulent affidavit stating that they had complied with Florida Statute § 723.071.  Section 723.071 provides that if a mobile

---

[2] The complaint states that MHC Operating Limited Partnership is described in Palm Beach County records as being the owner of the Park.  (Doc. No. 1, ¶ 16).  However, the Park is located in Pasco County.  It appears that this may be another example of counsel using the complaint in the Southern District of Florida case as a template for this case.

The complaint also states that MHC Operating Limited Partnership is a general partner of Equity LifeStyle Properties, Inc., which is confusing because Equity LifeStyle Properties, Inc. is a corporation.  (Doc. No. 1, ¶ 16).

home park owner offers its park for sale, the owner must notify the park's homeowners' association of the price and material terms of the offer and give the homeowners' association the right of first refusal.

Plaintiffs contend the HOA never received notice of the Holdens' sale of the Park.[3] Additionally, Plaintiffs contend that they first learned of Equity LifeStyle and MHC Operating's acquisition of the Park in November of 2019.

### C.  The 2015 LTA

On February 20, 2015, Equity LifeStyle, MHC Operating, and the Lawyer Defendants compelled the HOA to execute a long-term rental agreement ("LTA") that was drafted by the Lawyer Defendants.  Plaintiffs contend that the 2015 LTA contains various provisions that violate the Florida Mobile Home Act.  Specifically, Plaintiffs challenge the following provisions:

- a provision imposing a $35 late fee;[4]

- a provision changing the notice requirement for rent increases;

- the notice and cure provision for Defendants' violations of the LTA, as well as setting a condition precedent to Plaintiffs bringing suit for such violations;[5]

- a provision prohibiting the award of prevailing party attorneys' fees;[6]

- a provision requiring mandatory mediation;

- a provision waiving the right to a jury trial;

- a provision affecting delivery of the prospectus to resale purchasers of mobile homes;

---

[3] Plaintiffs have not included the Holdens or Diversified Investment Services, LLC as defendants in this case.

[4] This provision does not appear in the 2015 LTA attached to the complaint.

[5] Plaintiffs describe a 90-day notice and 45-day opportunity to cure provision in their complaint, but that provision does not appear in the 2015 LTA attached to the complaint.

[6] This provision does not appear in the 2015 LTA attached to the complaint.

- a provision regarding incentive arrangements;[7]

- a provision releasing all of the HOA's claims that it has ever had against Defendants and related entities;

- a provision stating that if there is a conflict between the prospectus and LTA, the LTA controls;

- a provision that the LTA supersedes all prior understandings relating to the LTA; and

- a provision that the HOA confirms the validity of the LTA and will take all actions requested by Defendants to carry out the LTA.

### D.  Other Statutory Violations

Plaintiffs also contend that Defendants' operation of the Park violates the Florida Mobile Home Act.  Specifically, Plaintiffs point to the following:

- Defendants' failure to consider Plaintiffs' park lot rental comparables;

- the imposition of various illegal fees and charges;

- the imposition of illegal conditions upon resale, including prohibiting mobile home sales to anyone with a criminal record;

- Defendants' diversion of mobile home resales;

- hyper-technical rule violations leading to evictions;

- Defendants' failure to provide Plaintiffs with a handicap accessible Park clubhouse;

- Defendants' concealment of the identities of resale mobile home purchasers; and

- Defendants' failure to maintain the seawalls.

---

[7] This provision does not appear in the 2015 LTA attached to the complaint.

### E.  Plaintiffs' Claims

As a result of the above, Plaintiffs assert nine claims.[8]  In Counts I through IV, Plaintiffs assert Florida and federal RICO claims against Defendants.[9]  In Count V, Plaintiffs contend that Defendants violated Florida's Deceptive and Unfair Trade Practices Act.  In Count VI, Plaintiffs allege that the Park Defendants violated the Americans with Disabilities Act ("ADA") and related Florida statutes.  In Count VII, Plaintiffs assert various violations of the Florida Mobile Home Act against Defendants.  In Count VIII, Plaintiffs allege that Defendants violated Florida Statutes § 812.014 and § 812.0145, which prohibit theft of property from a person over 65 years old.  In Count IX, Plaintiffs allege that the Park Defendants discriminated against potential mobile home renters and purchasers in violation of the Fair Housing Act.

## III.  Motions to Dismiss and Compel Bond

In response to the complaint, Defendants filed three motions—two motions to dismiss and a motion to compel Plaintiffs to post a bond in connection with their FDUTPA claim. Because these motions overlap and attack the sufficiency of the claims, the Court will analyze the motions together as to each claim.

### A.  Shotgun Pleading

At the outset, the Court notes that Defendants argue that the 78-page complaint is a shotgun pleading that is subject to dismissal.  Upon review, the Court agrees with Defendants. While the Court will give Plaintiffs leave to amend those claims that are not dismissed with prejudice, the Court warns Plaintiffs not to file another shotgun pleading.  Plaintiffs must better explain the ownership of, and the relationship between, Harbor View MHC, L.L.C., Equity

---

[8] It is unclear whether every plaintiff is asserting every claim.
[9] Counts I and III are asserted against the individual defendants (Zimmerman, Morris, Martin, Scott, and Bobo), and Counts II and IV are asserted against the entity defendants (Harbor View MHC, L.L.C, Equity LifeStyle, MHC Operating, and Bobo's law firm).

LifeStyle, and MHC Operating.  Plaintiffs must also be specific regarding each defendant's conduct in each claim.

Additionally, various parts of the complaint contain unnecessary information, such as the page-and-a-half quote of Equity LifeStyle's ethics policy and the references to case law throughout.  Plaintiffs should remove references to MHC Maralago (a defendant in the Southern District of Florida case), check their paragraph numbering within the complaint (there are two paragraphs identified as 64), and fix their references to specific sections of the 2015 LTA. Plaintiffs must also remove all references to communications that occurred during the parties' 2018 mediation.

The amended complaint should be a short and plain set of allegations that give Defendants fair notice of the claims being asserted against them and that show that Plaintiffs are entitled to the relief that they seek.  Additionally, Plaintiffs must comply with Federal Rule of Civil Procedure 9(b) and plead with particularity their claims of mail and wire fraud that provide a basis for their RICO claims.

**B.  RICO Claims**

In Counts I and II, Plaintiffs assert claims for Florida and federal RICO violations, while in Counts III and IV, Plaintiffs assert Florida and federal RICO conspiracy claims.  The relevant portion of the federal RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Racketeering activity includes various enumerated crimes, including mail fraud and wire fraud.  18 U.S.C. § 1961(1).

Florida's RICO statute, Florida Statute § 772.103, is patterned after the federal RICO

statute.  See Rogers v. Nacchio, 241 Fed. Appx. 602, 607 (11th Cir. 2007).  A Florida RICO

claim has the same elements as a federal RICO claim, except that the Florida claim refers to a

"pattern of criminal activity" and the federal claim refers to a "pattern of racketing activity."  See

Drummond v. Zimmerman, 2020 WL 1845671, at *3 n.1 (S.D. Fla. April 13, 2020); Fla. Stat. §

772.103.  There is overlap between the definitions of a "pattern of criminal activity" and a

"pattern of racketing activity"—both cover mail fraud and wire fraud.

Plaintiffs' RICO claims are based on the contention that Defendants engaged in a scheme

to defraud them through the following acts: the sales of the Park in 2002 without giving the HOA

notice and the right of first refusal, coercing the HOA to accept the 2015 LTA that contained

provisions that violated the Florid Mobile Home Act, and Defendants' operation of the Park in a

manner that violated the Florida Mobile Home Act.  Plaintiffs contend that Defendants used the

mail and interstate wires to perpetrate their fraudulent scheme.

**1.  Mail and Wire Fraud**

Defendants assert many arguments is support of dismissal of the RICO claims, the

strongest of which is that Plaintiffs fail to sufficiently allege the predicate acts of mail and wire

fraud.  Specifically, Defendants argue that Plaintiffs fail to allege any fraud by Defendants;

instead, they allege that Defendants committed various violations of the Florida Mobile Home

Act.  The Court agrees with Defendants.

As explained by the Drummond court, "Plaintiffs' allegations that the Park Defendants

violated the Florida Mobile Home Act . . . does not, without more, establish mail or wire fraud,

or the conspiracy to commit the same."  Id. at *4.  Plaintiffs must allege facts with particularity

to show that Defendants used the mail and interstate wires in order to further a *fraudulent*

scheme. Thus, in order to properly allege a fraudulent scheme, Plaintiffs must allege the following:

> (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior.

Drummond, 2020 WL 1845671, at *2 (quotation marks and citations omitted).

The Court notes that Plaintiffs argue that they believe that they have sufficiently alleged in the complaint that "homeowners were tricked into paying Defendants money." (Doc. No. 15, p. 2). However, Plaintiffs do not explain how Defendants allegedly tricked them, and Plaintiffs being charged in a manner that violates the Florida Mobile Home Act does not necessarily involve fraud.

Plaintiffs also argue that mail and wire fraud can be premised on a non-disclosure if there is an independent duty to disclose that Defendants breached. However, Plaintiffs have not sufficiently alleged that Defendants had an independent duty to disclose any information; instead, Plaintiffs allege only that they had a trusting relationship with Defendants. (Doc. No. 1, ¶ 81). Nor do Plaintiffs identify what specific information Defendants were required to disclose that they failed to disclose. It appears that Plaintiffs complain that Defendants acted in a way that violated the Florida Mobile Home Act, and had Defendants been acting honestly, they would not have violated the Florida Mobile Home Act or would have told Plaintiffs that the Florida Mobile Home Act required acts different from those taken by Defendants.

Based on the above, the Court finds that Plaintiffs have not sufficiently alleged their substantive RICO claims based on § 1962(c) due to their failure to sufficiently allege mail or wire fraud. Because the conduct, as alleged, does not violate § 1962(c), Plaintiffs' RICO

conspiracy claims based on the same conduct also fail.  See Rogers, 241 Fed. Appx. at 609.

Accordingly, the Court dismisses the RICO claims in Counts I though IV without prejudice.

While the Court will allow Plaintiffs to amend their complaint, the Court notes that based on

allegations as a whole, the Court doubts that Plaintiffs will be able to state a RICO claim.

### 2.  Operation and Management of the Enterprise

The Lawyer Defendants argue that the RICO claims asserted against them should be

dismissed *with prejudice*, because they did not participate in the operation or management of the

enterprise through their provision of legal services.  The Lawyer Defendants are correct that in

order to be liable under § 1962(c), the person or entity must "participate in the operation or

management of the enterprise itself."  Reeves v. Ernst & Young, 507 U.S. 170, 185 (1993).  The

relevant case law shows that an attorney that simply provides standard legal services to a RICO

enterprise is not subject to RICO liability under § 1962(c).  See Drummond, 2020 WL 1845671,

at *5 (stating that "courts have held that merely providing standard legal services will not subject

an attorney to RICO liability, even where the attorney's services furthered the enterprise's goal

or where the attorney knew of the illicit nature of the enterprise's affairs"); Kurlander v. Kaplan,

2019 WL 3944338, at *10 (M.D. Fla. Aug. 21, 2019); Crooked Creek Properties, Inc. v. Ensley,

2009 WL 3644835, at *22-23 (M.D. Ala. Oct. 28, 2009)(finding that the plaintiff's allegations—

that the attorney had corruptly advised the enterprise and that without his help, the enterprise

would have expired long ago—were not sufficient to state a § 1962(c) RICO claim against the

attorney); Design Pallets, Inc. v. Gray Robinson, P.A., 2008 WL 3200275, at *5 (M.D. Fla. Aug.

5, 2008)(finding that the plaintiffs' evidence—that the law firm drafted strategy memos and

business plans that the facilitated the enterprise's scheme—was not sufficient to prove a §

1962(c) RICO claim against the law firm, because the plaintiffs could not show an illegal action

taken by the law firm, and instead, there was no evidence that the law firm did anything other than act as legal counsel).

Plaintiffs argue that the Lawyer Defendants drafted the 2015 LTA, which contained terms that violated the Florida Mobile Home Act.  The Court finds that Plaintiffs have not alleged that the Lawyer Defendants did anything beyond providing legal services.  Based on the above, the Court agrees that Plaintiffs' §1962(c) claims against the Lawyer Defendants should be dismissed with prejudice.

However, the operations and management test for RICO liability under § 1962(c) does not apply to RICO conspiracy claims under § 1962(d).  See Design Pallets, 2008 WL 3200275, at *5 n.11.  Therefore, this is not a basis for dismissing the RICO conspiracy claims against the Lawyer Defendants with prejudice.  However, as noted above, the Court doubts that Plaintiffs will be able to state a RICO claim against any defendant.

Accordingly, the Court dismisses Counts I and II against the Lawyer Defendants with prejudice.  Additionally, the Court dismisses Counts I through IV against the Park Defendants, as well as Counts III and IV against the Lawyer Defendants, without prejudice.

### C.  FDUTPA

In their complaint, Plaintiffs contend that the following acts violate Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"): (1) Defendants threatening their improper authority to assess and coerce payment of higher lot rent and ad valorem pass-ons due to the fraudulent sale or transfer of the Park in 2002 in violation of the Florida Mobile Home Act; (2) Defendants' use of the 2015 LTA with provisions that violate the Florida Mobile Home Act; and (3) Defendants' other violations of the Florida Mobile Home Act described in Section II.D. above.  However, in their response to Defendants' motion to compel them to post a bond, Plaintiffs appear to re-cast their FDUTPA claim as one solely relating to the 2015 LTA.

Defendants argue that this claim should be dismissed for two reasons: (1) FDUTPA does not apply to Plaintiffs' claims relating to violations of the Florida Mobile Home Act; and (2) the provision of legal services by the Lawyer Defendants cannot be a basis for a FDUTPA claim. For the reasons stated below, the Court agrees that Plaintiffs' FDUTPA claim must be dismissed.

### 1. Exceptions to FDUTPA

Defendants argue that this claim should be dismissed, because FDUTPA does not apply to Plaintiffs' claims relating to violations of the Florida Mobile Home Act.  There are two exceptions to FDUPTA that are relevant in this case:

> (a) Causes of action pertaining to commercial real property located in this state if the parties to the action executed a written lease or contract that expressly provides for the process of resolution of any dispute and the award of damages, attorney's fees, and costs, if any; or
> (b) Causes of action concerning failure to maintain real property if the Florida Statutes:
>> 1. Require the owner to comply with applicable building, housing, and health codes;
>> 2. Require the owner to maintain buildings and improvements in common areas in a good state of repair and maintenance and maintain the common areas in a good state of appearance, safety, and cleanliness; and
>> 3. Provide a cause of action for failure to maintain the real property and provide legal or equitable remedies, including the award of attorney's fees.

Fla. Stat. § 501.212(7).

Section 501.212(7)(a) applies to Plaintiffs' FDUTPA claim against the Park Defendants, because Plaintiffs' claim relates to commercial real property located in Florida, and the 2015 LTA is a written lease or contract that provides a dispute resolution process.[10]  Plaintiffs do not

---

[10] The 2015 LTA provides for the following dispute resolution process: first, the parties must attend non-binding mediation, and then either party may file suit that will be tried as a bench trial.  Furthermore, the Florida Mobile Home Act provides for an award of attorneys' fees and costs to the prevailing party if that party proves that the other party did not comply with the duty of good faith and fair dealing implied in every rental agreement and in every duty set forth in the

respond with arguments that this FDUTPA exception does not apply.  Instead, Plaintiffs only address the exception set forth in § 501.212(7)(b) and concede that it prevents a FDUTPA claim based on the Park Defendants' failure to maintain the Park and the seawalls.  (Doc. No. 23, p. 2).  Due to Plaintiffs' failure to address the argument that § 501.212(7)(a) prevents a FDUTPA claim based on the Park Defendants' other alleged conduct, the Court dismisses this claim against the Park Defendants with prejudice.  See Drummond, 2020 WL 1845671, at *6 (concluding that FDUTPA does not apply to mobile home parks).

## 2.  Legal Services

Likewise, the Lawyer Defendants seek dismissal of this claim, arguing that their provision of legal services cannot be a basis for a FDUTPA claim.  This Court agrees.  As explained by the Kaplan court:

> Attorneys are not per se exempt from FDUTPA.  However, the practice of law normally does not satisfy the elements necessary to bring a claim under FDUTPA.  The key missing element is that FDUPTA only protects against unfair acts or practices in the "conduct of any trade or commerce."  "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  Despite this broad definition, conduct by a law firm or lawyers during the provision of legal services is not "trade or commerce" and is instead the exercise of a legal remedy.  Accordingly, the practice of law is not considered trade or commerce, meaning FDUTPA does not apply.

Kaplan, 2019 WL 3944338, at *8 (internal citations omitted).  This Court finds that Plaintiffs have not alleged that the Lawyer Defendants did anything beyond providing legal services, and therefore, the FDUTPA claim against the Lawyer Defendants is dismissed with prejudice.  See

---

Florida Mobile Home Act.  Fla. Stat. § 723.021; see also Fla. Stat. § 723.068 (providing for the award of prevailing party attorneys' fees in proceedings brough to enforce the Florida Mobile Home Act).

<u>Drummond</u>, 2020 WL 1845671, at *6; <u>Ellis v. Warner</u>, 2017 WL 634287, at *24-25 (S.D. Fla. Feb. 16, 2017).

### 3.  Motion to Compel Bond

Defendants also ask the Court to compel Plaintiffs to post a bond in connection with their FDUTPA claim.  Since the Court has dismissed Plaintiffs' FDUTPA claim with prejudice, the Court denies this motion as moot.

### D.  ADA

Plaintiffs contend that the Park Defendants violated the ADA, because the Park clubhouse, pool, signage, parking, exterior routes, doors, and restrooms have various disability barriers that need to be remedied.  Plaintiffs contend that the mobile home owners have mobility, balance, gait, vision, and hearing difficulties.

The Park Defendants move for dismissal, arguing: (1) Plaintiffs do not adequately allege standing; and (2) Plaintiffs do not adequately allege that the Park Defendants control the Park and could correct the alleged barriers if such relief is ordered.  As explained below, the Court agrees and finds that this claim must be dismissed.[11]

### 1.  Standing

The Park Defendants move for dismissal, arguing that Plaintiffs do not adequately allege standing.  To begin with, it is unclear whether all of the plaintiffs are asserting this claim or just the HOA.  If the Individual Plaintiffs are asserting this claim, they have failed to allege what disability each of them is suffering from, and as such, they have failed to put forth sufficient

---

[11] The Park Defendants also argue that the ADA does not apply, because the Park is not a place of public accommodation.  However, Plaintiffs allege that parts of the Park are places of public accommodation (Doc. No. 1, ¶ 139), and such an allegation would defeat dismissal on that basis.  <u>See</u> <u>Schalamar Creek Mobile Homeowner's Association, Inc. v. Adler</u>, 2019 WL 8358711, at *11 (M.D. Fla. June 10, 2019)(stating that whether the park was a public accommodation was a fact question that could not be resolved on a motion to dismiss).

14

allegations to show that they have standing to pursue this claim.  Therefore, this claim is dismissed as to the Individual Plaintiffs for lack of standing.

The Park Defendants also argue that the HOA does not have associational standing to pursue this claim.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 (1977).  The Park Defendants argue that the HOA cannot meet the first or second element.

The first element for associational standing is that the HOA's members would otherwise have standing to sue in their own right.  Here, the HOA alleges that some of its mobile homeowners have mobility, balance, gait, vision, and hearing difficulties.  The HOA alleges that some of its mobile homeowners require the use of canes, walkers, wheelchairs, audiovisual devices, and hearing aids.  Additionally, the HOA alleges that some of its mobile homeowners are limited in the major life activities of accurately visualizing the world and walking without assistance.  The Court finds that this is sufficient to meet the first element for associational standing.

The second element is that the interests the HOA seeks to protect are germane to the HOA's purpose.  Plaintiffs do not directly address this argument.  Instead, they argue that in Schalamar Creek Mobile Homeowner's Association, Inc. v. Adler, 2019 WL 8358711, at *8 (M.D. Fla. June 10, 2019), the court found that the HOA had associational standing.  However, it is not clear whether the defendants in that case challenged whether the ADA interests the HOA sought to enforce were germane to the HOA's purpose.  In other cases addressing this issue, the courts have found that the HOA was not a disability advocacy group, and therefore, pursuing an

ADA claim on behalf of its mobile homeowners was not germane to the HOA's purpose.  See

Drummond, 2020 WL 1845671, at *7; Asbury v. Slider, 2020 WL 871097, at *3 (M.D. Fla. Feb.

21, 2020).  Because Plaintiffs have not directly addressed this issue, the Court finds that

Plaintiffs have not shown a basis for the HOA's standing to pursue the ADA claim.  Therefore,

this claim is dismissed as to the HOA for lack of standing.

### 2.  Control

Next, the Park Defendants argue that Plaintiffs do not adequately allege that all of the

Park Defendants continue to control the Park and can correct the alleged barriers if such relief is

ordered.  The Court agrees as to Zimmerman and Martin.  Zimmerman is alleged to have been an

operator of the Park through July of 2018.  (Doc. No. 1, ¶ 10).  Martin is not alleged to have been

an operator of the Park.  (Doc. No. 1, ¶ 11).  The remaining Park Defendants are alleged to be

current operators of the Park.  (Doc. No. 1, ¶ 12, 13, 14, 15, 16).  This is a separate basis for

dismissal of the ADA claim against Zimmerman and Martin.

### E.  FMHA

Throughout the complaint, Plaintiffs allege that Defendants committed various violations

of the Florida Mobile Home Act ("FMHA").  Defendants make two arguments for dismissal of

this claim: (1) the Lawyer Defendants contend that the FMHA does not regulate their provision

of legal services; and (2) the sales of the Park in 2002 without notice to the HOA is not

actionable.

### 1.  Legal Services

The Lawyer Defendants argue that Plaintiffs' claim for violations of the FMHA should

be dismissed, because the FMHA does not regulate their provision of legal services.  Plaintiffs

fail to respond to this argument, and the Court construes their silence as a concession that this

16

claim fails.  Accordingly, the Court dismisses the claim for FMHA violations against the Lawyer Defendants with prejudice.

### 2.  Sales of the Park in 2002

The Park Defendants argue that the sales of the Park in 2002 without notice to the HOA is not actionable.  Specifically, they argue that the statute of limitations has expired for transfers that occurred 18 years ago.  Plaintiffs acknowledge in their complaint that the Holdens recorded a deed in 2002 evidencing their sale of the Park, so the statute of limitations would begin to run for that transfer in 2002.  Furthermore, the transfer of the Park from the Holdens to Diversified Investments did not involve any of the parties to this case.  Finally, any violation of the HOA's right of first refusal relating to the transfer of the Park from Diversified Investments to the Park Defendant entities would have been committed by Diversified Investments, as Florida Statute § 723.071 obligates the mobile home park owner to give notice to the HOA about a sale of the mobile home park.  For these reasons, the Court agrees that neither transfer of the Park in 2002 can be a basis for a claim that the Park Defendants violated the FMHA.  To that extent, the FMHA claim is dismissed with prejudice.

### F.  Theft

Plaintiffs allege that Defendants violated Florida Statute § 812.014 and § 812.0145, which prohibit theft of property from a person over 65 years old.  Defendants move for dismissal of this claim, and Plaintiffs have not responded to their arguments.  Therefore, the Court construes Plaintiffs' silence as a concession that this claim is insufficient, and the Court dismisses this claim.

### G.  FHA

Plaintiffs allege that the Park Defendants discriminated against potential mobile home renters and purchasers in violation of the Fair Housing Act ("FHA").  Specifically, Plaintiffs

contend that by disqualifying people with criminal records, the Park Defendants' screening process has a disparate impact on Latinos and African Americans.

The Park Defendants argue that this claim must be dismissed, because Plaintiffs lack standing to pursue this claim.  The Individual Plaintiffs have not alleged that they have attempted to rent or sell their mobile homes to any Latinos or African Americans that have a criminal record, nor do the Individual Plaintiffs allege that they currently want to rent or sell their mobile homes.  Therefore, it is unclear how Plaintiffs have been damaged by Defendants' screening process.  Likewise, it is unclear how the HOA has been damaged by Defendants' screening process.  Accordingly, the Court agrees with Defendants that Plaintiffs lack standing to pursue this claim, and the claim must be dismissed.

### H.  The HOA's Standing to Sue for Damages

Defendants argue that the HOA lacks associational standing to assert any claims seeking damages.  As previously stated, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343.  Any claim for damages in this case would necessarily require the participation of individual mobile home owners.  Plaintiffs do not directly address this argument as to any of the claims other than the FMHA claim.  Accordingly, the Court finds that the HOA lacks standing to pursue the other claims seeking damages.

As to the FMHA claim, it appears that Plaintiffs are arguing that the HOA may bring this claim pursuant to Florida Statute § 723.037(1).  Section 723.037(1) requires that the park owner give the homeowners' association written notice of "any increase in lot rental amount or reduction in services or utilities provided by the park owner or change in rules and regulations."

18

However, in order to have "standing to challenge the increase in lot rental amount, reduction in services or utilities, or change of rules and regulations," the homeowners' association must get "a majority of the affected homeowners [to] agree, in writing, to such representation." Fla. Stat. § 723.037(1).

The HOA argues that it is not required to get written agreement by a majority of affected homeowners in order to represent them, because the plain language of the statute shows that such requirement is only triggered if the park owner gives the required written notice of an increase in lot rental amount, reduction in services or utilities, or change of rules and regulations. The Court does not read the statute the same way as the HOA, nor does the HOA provide any case law to support its interpretation. Accordingly, the Court finds that the HOA currently lacks standing to pursue a FMHA claim.

## IV.  Conclusion

Based on the above, the Court finds that the entire complaint must be dismissed. While the Court will give the Individual Plaintiffs leave to amend, the Court finds that certain claims are dismissed with prejudice and cannot be reasserted. Specifically, the following claims are dismissed with prejudice as to the Lawyer Defendants: the RICO claims in Counts I and II, the FDUTPA claim in Count V, and the FMHA claim in Count VII. Likewise, the following claims are dismissed with prejudice as to the Park Defendants: the FDUTPA claim in Count V and the FMHA claim to the extent that it is based on the transfers of the Park in 2002. As currently pled, the HOA does not have standing to assert any claims.

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     The Park Defendants' Motion to Dismiss (Doc. No. 8) is **GRANTED**.

(2)     The Lawyer Defendants' Motion to Dismiss (Doc. No. 12) is **GRANTED**.

(3)     Defendants' Motion to Compel Plaintiffs to Post Bond relating to their FDUTPA claim

(Doc. No. 17) is **DENIED AS MOOT**.

(4)     Defendants Motion to File a Reply (Doc. No. 16) is **DENIED**.

(5)     The Individual Plaintiffs may file an amended complaint by ***May 11, 2020***.  Failure to do

so will result in this case being closed without further notice.

DONE AND ORDERED at Tampa, Florida, this 29th day of April, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record